HAWKINS v. HAWKINS.

4-5829                                                      137 S. W. 2d 904

Opinion delivered March 11, 1940.

Charles A. Maze, E. H. Patterson and George O. Patterson, for appellant.

Byrd & Morrow, for appellee.

SMITH, J. The parties to this litigation, John and Ike Hawkins, are brothers, and each owned stock in the First National Bank of Lamar, Arkansas. John owned $4,200 of the capital stock of the bank and Ike owned $500. Having become a national bank examiner, John found it necessary to dispose of the stock outstanding in his name, and he did this by transferring it to his wife. The bank became insolvent, and an arrangement was made with the Farmers National Bank of Clarksville to liquidate its assets and pay its creditors. As an inducement to the Clarksville bank to assume this obligation an indemnifying bond was executed to it in the sum of $15,000, which was signed by the directors of the Lamar bank, Ike being one of that number. The assets of the Lamar bank proved to be less valuable than had been supposed, and it became necessary for the stockholders to make contributions to the Clarksville bank to avoid a stock assessment. Under this arrangement the Hawkins brothers were to contribute $2,000, of which amount John was to contribute $1,200 and Ike $800. They did not have the money in cash, and it be-

came necessary to borrow it, and an application was made to the Clarksville bank for a loan of that amount. The bank was unwilling to make the loan to John, because he was a bank examiner, but did make the $2,000 loan to Ike personally.

The arrangement under which the loan was procured and secured was as follows: John gave Ike his personal note for $1,200, which Ike indorsed to the bank as collateral. In addition Ike pledged to the bank a judgment which he had recovered against one J. S. Garner in the sum of $4,626.22. The judgment was assigned to the bank February 3, 1934. In this manner liability on the Farmers Bank stock owned by Ike and that assigned by John to his wife was discharged.

The facts just stated are undisputed, but there is the sharpest conflict as to the facts hereinafter recited; but we state the facts to be as testified by Ike, for the reason that he recovered the judgment here appealed from, and which we are asked to reverse as being unsupported by the testimony. The jury resolved the conflicts in the testimony between these brothers in favor of Ike, and we assume his testimony to be true in determining the legal sufficiency of the evidence to support the judgment here appealed from.

The $2,000 note to the Clarksville bank was not paid when due, and John refused to renew his $1,200 note to Ike. The bank demanded payment of the $2,000 note, and Ike advised John that he would have to sacrifice or sell at a loss his Garner judgment to pay the $2,000 note. Ike testified that he so advised John, and was advised by John to pay the note and that he (John) would pay one-half of any loss resulting from the sale of the judgment. Ike testified that John wrote him a letter to that effect, which he had lost. Thereupon Ike permitted the bank to treat the assignment of the judgment first made by way of collateral as a sale thereof, and this suit was brought to recover one-half of the loss sustained on that account, which was alleged to be the difference between the amount of the judgment ($4,626.22) and the amount of the note ($2,000), or

$2,626.22, and judgment was prayed in the sum of $1,313.11.

The testimony is conflicting as to the value of the judgment, owing to the fact that the property of Garner, the judgment debtor, was encumbered; but there was testimony that the judgment might have been collected notwithstanding that fact.

After paying the $2,000 note in this manner, Ike brought suit on John's $1,200 note, and at the same time, in the same suit, included an open account alleged to be due Ike by John in the sum of $900. This open account had no relation to the loss sustained on account of the sale of the Garner judgment to the bank. Judgment was recovered in this suit for the amount of the $1,200 note, less certain credits, but the suit on the $900 account was dismissed with prejudice. Thereafter Ike brought this suit to recover the $1,313.11 loss sustained on account of the sale of the judgment.

Several defenses were interposed to this suit, one being *res judicata,* which is based upon the contention that as the claim for the loss of the $1,313.11 could have been included in the suit on the $900 open account, it should have been, and is, therefore, concluded by the judgment in that case, which dismissed the suit on the open account with prejudice.

This does not follow. We know of no law requiring a creditor, having separate demands against a debtor having no relation to each other, to sue upon all of them if he wishes to bring suit upon any one of them. The creditor might be willing to extend indulgence, by way of extension of time, upon one demand, which he was not willing to give in the payment of another. Of course, if the demands were so related that proof to establish any one of them required a consideration of the validity of the other, both must be sued upon when suit to enforce either is brought. But not so when the demands are not so related, this upon the theory that the creditor may not split up his causes of action to harass his debtor with a multiplicity of suits.

The law is so declared in Freeman on Judgments, vol. 2 (5th Ed.), § 609, pages 1279 and 1280, where it is

said: "An accounting bars the subsequent assertion of any claims necessarily involved in it, although no evidence was offered and no specific finding was made thereon. But where matters of account do not constitute a single demand separate actions may be brought, as where different periods of credit are given." The learned author stated in the following section that the same rule applies in actions in tort, and that one cause of action cannot be split into several, and that a single tort can be the foundation for but one claim for damages, and that all the damages which can by any possibility result from a single tort form an indivisible cause of action and must be recovered in one action. Among other cases cited in support of the text is our own case of *Hydrick* v. *St. Louis, I. M. & S. Ry. Co.*, 118 Ark. 402, 177 S. W. 5, L. R. A. 1916B, 742.

We conclude, therefore, that the suit on the $900 open account is not *res judicata* against the demand here asserted, for the reason that the separate demands have no relation to each other.

Ike explained that he did not include the $1,313.11 claim here sued on in the first suit for the reason that John had given him certain notes for collection, referred to as the Winningham notes (the amount of which does not appear), under an agreement that he might retain one-half of any sum collected on those notes, and that he still had the notes in his possession for that purpose, but that so far he had collected only $32 on those notes. Ike testified that when that collection was made he applied one-half thereof, or $16, as a credit on the demand here sued on, and that he did this because he had not been directed otherwise to credit it.

The significance of this credit is that unless authorized the demand here sued on is barred by the three-years statute of limitations. Upon this question the court charged the jury as follows: "No. 5. Defendant interposes the defense that plaintiff's cause of action is barred by limitations. You are instructed that as a matter of law, the statute began to run when plaintiff transferred and assigned his said judgment referred to in these instructions, and unless some payment by

defendant by way of reimbursement or by his authority was made within three years from such date, that is the date of the payment of the note with the judgment owned by plaintiff, then plaintiff's cause of action is barred by the statute of limitations and your verdict should be for the defendant.''

The cause of action did not accrue until the date of the settlement with the bank by the sale to it of the Garner judgment, which appears to have occurred February 3, 1934, and this suit was filed February 24, 1939, which was, of course, more than three years thereafter. However, the alleged payment of $16 was made and credit given on January 15, 1937, which was less than three years of the date of the sale of the judgment to the bank, when the cause of action accrued, and also within three years of the date when the suit was brought. So that, if this $16 credit was in fact made and authorized, the cause of action was not barred when the suit was brought.

Numerous cases have announced the law to be that a debtor owing more than one demand to a single creditor may direct the application to be made of any payment which he makes to his creditor, but if he makes the payment on his indebtedness without designating how it shall be applied, the creditor may apply it to any one of his demands as he pleases. The verdict of the jury concludes the fact that the $16 payment was made before the cause of action here sued on was barred, and that no direction was given as to its application. Ike, therefore, had the right to apply this payment as he said he did. The fact is undisputed that he did not apply this credit to either the $900 account or upon the $1,200 note. There were credits upon the $1,200 note when suit was brought to enforce its payment, but these did not include the $16.

It is insisted that the testimony does not show that Ike sustained any loss on account of the sale of the judgment. This was, of course, a question of fact, and was submitted to the jury under an instruction reading as follows: ''No. 4. You are instructed if you find from the evidence in this case, that in the pay-

ment of the note executed by plaintiff to the Farmers National Bank of Clarksville in the sum of $2,000 with the judgment owned by plaintiff against J. S. Garner, he sustained no loss thereby, and that said judgment was not in fact worth more than the allowance of same in payment of said note, then your verdict should be for the defendant.''

According to the testimony offered on Ike's behalf the loss equaled the amount sued for, whereas the verdict returned was for only $550. The verdict is conclusive of that question.

The contract is very unusual, but it was not beyond the power of the parties to make it, and that it was made is shown by testimony sufficient to support that finding, although it is sharply disputed.

No error appears, and the judgment must be affirmed, it is so ordered.