434

## W. W. MISENHIMER, TRUSTEE AND SECURITY BANK v. PERKINS OIL COMPANY

5-5209                                    451 S. W. 2d 864

### Opinion delivered April 6, 1970

*Douglas Bradley,* for appellants.

*Branch, Adair & Thompson,* for appellee.

GEORGE ROSE SMITH, Justice. The question in this case is priority of lien between two real estate deeds of trust, which we will refer to as mortgages, executed by Parsons Gin Company. The earlier mortgage was executed by the gin company on April 30, 1957, and is held by the appellee, Perkins Oil Company. The later mortgage was executed by the gin company on January 5, 1967, and is held by the appellant, Security Bank of Paragould. The chancellor upheld the oil company's claim to priority under the earlier mortgage. We find the decree to be correct.

The controlling issue is really whether the oil company's mortgage was saved by part payments from the bar of the five-year statute of limitations. Ark. Stat. Ann. § 37-209 (Repl. 1962). That mortgage was executed by the gin company to DeSoto Oil Company to secure five $6,000 notes due annually from December 15, 1957, to December 15, 1961. The first note was paid. Part payments were indorsed on the other four notes by DeSoto before it went out of business and sold those four notes to the appellee, Perkins Oil Company, on May 22, 1963. Perkins Oil Company continued to carry on business with the gin company.

The oil company set up two ledger accounts on its books with respect to the gin company. The first one, which accumulated only a half dozen entries, was entitled "Notes Receivable—Parsons Gin Company," and reflected the gin company's note indebtedness and the payments thereon. The second account, entitled "Parsons Gin Company," was the general account in which day-to-day transactions between the parties were entered. On January 31 of two separate years the oil company struck a balance in the latter account and transferred the sum standing to the gin company's credit as a payment on the note account. In that manner the oil company credited $5,165.17 to the note account on January 31, 1964, and $9,488.36 to the note account on January 31, 1966. Those are the part payments relied upon by the oil company to avoid the bar of limitations.

To continue the statement of facts, the gin company executed its second mortgage to the appellant, Security Bank, on January 5, 1967. That instrument contains this recital: "This lien on the above property is second and inferior to lien held by Perkins Oil Company." Under our law that recital prevents the bank from taking advantage of the oil company's failure to indorse the gin company's part payments upon the margin of the recorded mortgage. *Gunnels v. Farmers' Bank of Emerson*, 184 Ark. 149, 40 S. W. 2d 989 (1931). Thus the bank's claim to priority narrows

down to its insistence that the oil company's transfer of credits to the Parsons note account in 1964 and 1966 did not cause the statute of limitations to begin running anew.

We cannot sustain that argument. The important point is the fact of payment, not its indorsement upon the notes or upon the ledger. See *Slagle* v. *Box,* 124 Ark. 43, 186 S. W. 299 (1916); *King* v. *Boles,* 124 Ark. 112, 186 S. W. 607 (1916). And where there are two or more obligations owed by the debtor, the creditor is entitled to apply a part payment as he chooses if the application has not been directed by the debtor. *Hawkins* v. *Hawkins,* 200 Ark. 38, 137 S. W. 2d 904 (1940).

Here T. C. Lee, the president of the oil company, testified that the applications of the payments were made with the debtor's consent. "We consulted with Mr. Parsons and told him what the status of his account was, and he said to apply it on his Notes Payable." There is no merit in the bank's objection to Mr. Lee's testimony under the hearsay rule. The gin company, a partnership, was the principal defendant in the case; so the quoted statements were properly received as admissions made by a party to the suit. *Greer* v. *Davis,* 177 Ark. 55, 5 S. W. 2d 742 (1928). They, together with the ledger entries, establish the part payments which kept the notes alive.

Affirmed.