CITY OF LITTLE ROCK *v.* NEWCOMB.

4-9518                                              239 S. W. 2d 750

Opinion delivered May 28, 1951.

*O. D. Longstreth, Jr., Dave E. Witt, Joseph Brooks* and *Wm. J. Kirby,* for appellant.

*Jack Holt* and *John F. Park,* for appellee.

MINOR W. MILLWEE, Justice. Appellee, Irving Newcomb, Jr., was discharged from the Little Rock police force by the Chief of Police on July 17, 1950, for violation of Article 3, § 9 of the Civil Service Rules and Regulations of the Police Department.[1] The letter of discharge specifically charged ". . . that you did on Saturday night, July 15, 1950, at approximately 7 :45 p. m.

[1] Section 9 reads as follows: "Behavior on the part of any member of the Police Department unbecoming a gentleman, or of such nature as to bring disgrace or disrepute upon the Department, or any member thereof, shall, after a hearing thereon be punished by suspension without pay for not more than thirty days or dismissal from the service."

strike a Negro man, Bud Beal, 702 Abeles, on the head with your slapper knocking him to the pavement and then kicking or stomping him in the chest while he was lying on the pavement.'' Appellee denied the charge and requested a hearing before the Civil Service Commission. A hearing was held August 11, 1950, before three of the five commissioners. After taking the case under advisement, the full commission, on August 22, 1950, sustained the action of the Chief of Police in discharging appellee.

On appeal to Pulaski Circuit Court the case was heard on the transcript of the evidence before the Civil Service Commission and the additional testimony of fifteen witnesses before the court. This appeal is from the judgment of the circuit court reversing the order of the commission and ordering appellee's reinstatement as patrolman.

In reaching a conclusion on the pivotal question as to whether appellee used more force than was necessary in arresting Beal on the night in question, the circuit judge made extensive findings of fact and conclusions of law which were incorporated in the judgment. At the outset counsel for appellants frankly concede that a fair preponderance of the evidence fully supports the circuit court's findings, ''(1) That Beal had been drinking and the officer was performing his sworn duty in making the arrest, (2) that Beal had a bad reputation for violence, and (3) that the officer knew of Beal's inclination to be unruly and was justified in being unusually careful under the circumstances.''

The incident resulting in appellee's discharge occurred at Sixth and Townsend Streets in the City of Little Rock. On the night in question appellee and another patrolman, Tom Owen, parked their squad car in front of a cafe and beer tavern on the south side of Sixth Street. Appellee waited in the car while Owen made a routine check of the cafe. Appellee testified that about two minutes later he saw Beal across the street standing on the curb cursing; that he got out of the car, walked across the street and observed that Beal was

drunk; that he told Beal to go to the car across the street and that he was under arrest for drunkenness; and that when they reached the car appellee opened the door and told Beal to get in.

Appellee then testified: "At that time Bud Beal stated he would not get in the automobile, he had done nothing to be arrested for and that I would not put him in the automobile. I talked to Bud Beal and tried to get him in the automobile and at that time I took hold of his left elbow in an attempt to lead him into the automobile. As I pulled forward Beal pulled back away from me and at that time the only thing that I saw was his right fist clenched coming around at me; I blocked his right with my left and had nothing in my hand at that time; I slapped Bud Beal with my open hand the first lick that was struck, and at that time I tried to crowd Beal in an attempt to get hold of him because I had only padded him down, that is just run the hand over the pockets, did not have a chance to thoroughly search Bud Beal and at the time we both engaged in combat his arms were around my shoulder and we were twisting and turning in the fight and I wound up on the left rear fender of car No. 19. At that time Officer Owen came out of the cafe and something distracted Bud Beal's attention because he released my right arm. When he released my right arm I grabbed my leather slapper out of my back pocket and struck him once on his left cheek. And he released my left hand and started up with his hand again and at that time I struck him and knocked him to the pavement." Appellee further testified that he then stepped over Beal, caught him by the belt and with the assistance of Owen placed Beal in the car and took him to police headquarters where charges of drunkenness, disturbing the peace and resisting arrest were placed against Beal.

Beal was released from jail about 10:30 p. m. by the night Chief of Police and entered a hospital where he remained over night. A physician who examined him about 2:30 the next morning found bruises near the left eye and behind the left ear and a one-inch laceration of

the scalp. He found no trauma or bruises to the chest or abdominal areas although Beal complained of tenderness in those areas. He detected the odor of alcohol about Beal, but stated that the latter was not intoxicated at the time of the examination.

In his testimony Beal admitted that he refused to enter the squad car, stated that he had not "had a drop to drink" and denied that he was cursing. He stated that he was talking to two men at the time of the arrest but, neither of the parties named appeared as a witness at either hearing. He denied making any attempt to strike appellee and stated that when appellee ordered him to get in the car he held both hands up with his left hand open and the right hand clenched about some money he was carrying at the time. He also stated, and appellee denied, that the latter stomped him after knocking him down with the slapper. Five purported eyewitnesses supported Beal's statement that appellee kicked or stomped him after he was knocked down, while Owen and six other such witnesses supported appellee's version of the difficulty and were just as positive that appellee did not stomp or kick Beal. The medical evidence tends to support the testimony on behalf of appellee that Beal was not kicked in the chest or abdomen as charged.

In his findings the circuit judge stated that the case would be tried *de novo* and the findings of the commission treated as having no binding force on the court. In so ruling, the trial court was apparently following our holding in the case of *Civil Service Commission of Van Buren, Ark.,* v. *Matlock,* 206 Ark. 1145, 178 S. W. 2d 662, where in construing an earlier civil service act (Ark. Stats., § 19-1605), we said: "The statute (§ 9949 of Pope's Digest) regulating proceedings of this kind requires the circuit court, on appeal from the action of the Commission, to hear same on the record of the proceedings before the Commission, and also upon such additional relevant and competent testimony as either party may offer. This amounts to a provision for a trial of the matter *de novo* in the circuit court.

"In discussing the rule as to proceedings in court on appeal from the action of administrative bodies this rule is laid down in Am. Jur., Vol. 42, p. 664: 'The statute may expressly provide that the court may hear new or additional evidence, and this may be construed as requiring a trial *de novo.*'"

The controlling statute in the instant case is § 2 of Act 326 of 1949 (Ark. Stats., § 19-1032) which provides: "The findings of the Commission shall be subject to a right of review by the Circuit Court within whose jurisdiction the Board of Civil Service Commission is situated. Said appeal shall be filed in the Circuit Clerk's office within thirty (30) days from the date of the rendition of the decision by the Commission. Such trials before the Court shall be upon the transcript from the Clerk or Secretary of the Board of Civil Service Commissioners, which transcript shall contain all of the evidence introduced before the Board of Civil Service Commissioners, and any such other evidence that the parties thereto desire to introduce, provided same is legal, relevant and competent." While this statute does not specifically provide for a trial *de novo* in the circuit court, as was provided in the earlier act, we think the effect of the language used is to authorize a *de novo* hearing in the circuit court on the record before the Commission plus any additional testimony that might be offered at the hearing in the circuit court.

Appellants contend that no additional evidence was introduced in the circuit court upon the primary issue as to whether appellee used unnecessary force in effecting the arrest of Beal. It is further argued that since the evidence before the Commission on this issue was in hopeless conflict, it cannot be said that the Commission's finding was against the preponderance of the evidence if any weight whatever is to be given thereto. We cannot agree with the assertion that the additional testimony before the circuit court has no bearing on whether appellee used unnecessary force in making the arrest. It is true that no additional eyewitnesses to the difficulty at the scene of the arrest testified in circuit

court. However, there was considerable testimony in the circuit court to the effect that Beal was intoxicated when brought to police headquarters and at the time of his release; that Beal had a bad reputation for violence, which was well known to appellee; and that appellee had a good reputation as a peace officer. These were matters properly to be considered by the court in determining the question of appellee's guilt or innocence of the charges. The Commission did not have the benefit of this additional evidence which, if heard by that body, might have led to a different decision.

We conclude that the Legislature in enacting Act 326, *supra,* intended to provide for a *de novo* hearing by the circuit court on the record before the Commission and any additional competent testimony that either party might desire to introduce; and that this court should hear the matter *de novo* on the entire record before the circuit court, as in chancery cases. While this necessarily means that neither the circuit court nor this court, on appeal, is bound by the findings and conclusions of the trial tribunal, it does not mean that due deference is not to be accorded the trial tribunal's finding as to the preponderance of the evidence where the testimony is hopelessly conflicting, or evenly balanced. Although we try chancery cases *de novo,* we have frequently said that the judgment of the chancellor on the question of the preponderance of the evidence will be considered as persuasive when the evidence is conflicting and evenly poised, or nearly so. *Greenlee* v. *Rowland,* 85 Ark. 101, 107 S. W. 193; *Benton* v. *Southern Engine & Boiler Works,* 101 Ark. 493, 142 S. W. 1138; *Civil Service Commission of Van Buren, Arkansas,* v. *Matlock, supra.*

The findings and conclusions of the trial judge show that he carefully and fully considered the evidence before the Commission along with the additional testimony originally heard in circuit court. We are unable to say that these findings are against the preponderance of the evidence. The judgment is, therefore, affirmed.

Holt, J., not participating.

Griffin Smith, C.J., and George Rose Smith, J., dissent.