PETTY *v.* CITY OF PINE BLUFF.

5-3459                                                386 S. W. 2d 935

Opinion delivered February 22, 1965

*McMath, Leatherman, Woods & Youngdahl,* by *John P. Sizemore,* for appellant.

*George N. Holmes,* for appellee.

JIM JOHNSON, Associate Justice. This appeal arises from suspension of a firemen for moving his residence outside the city which employed him.

Appellant Bobby Petty was employed by appellee City of Pine Bluff as a fireman in 1951. In 1952 an ordinance requiring all city police and fire department employees to reside within the city limits, without exception, was repealed and the city council passed ordinance § 3133 requiring that all members of these departments "must be residents of the city or live within such close proximity of the city as to not interfere with the proper performance of their duties." The ordinance also provided that in the case of non-resident employees of the city, the department chief (police or fire) shall "indicate by letter whether in his opinion the employee lives within such proximity as to be able to properly perform his duties."

On June 1, 1963, appellant wrote the chairman of the Pine Bluff Civil Service Commission, with a copy to Fire Chief Edwards, stating in essence that it was an economic necessity for him to sell his house in the city and move into his house at Sulphur Springs, six miles outside the city limits. The letter asked for the position of the commission and the fire department on such a move, and for an exception to the policy, if there was any policy against it. On September 18, 1963, the fire chief advised appellant by letter that he had violated ordinance No. 3133 and that his salary would be discontinued as of 6:00 P.M. that day, and further that appellant was also suspended indefinitely for insubordination for violating orders not to move out of the city limits. Appellant appealed his suspension to the Civil Service Commission. A public hearing was held September 22, 1963, at which appellant was present with his counsel and introduced evidence and testimony on his behalf. On October 23, 1963, the Commission advised appellant that it sustained Fire Chief Edwards in his indefinite sustained Fire Chief Edwards in his indefinite suspension of appellant for violation of orders and denied his appeal.

Appellant then appealed the Commission's decision to the Jefferson Circuit Court. The case was heard before the court on the record before the Commission

and in addition testimony of various witnesses on behalf of appellant and appellee. The circuit court in its judgment of July 1, 1964, sustained appellant's suspension, from which appellant has prosecuted this appeal.

All the proceedings in this case have been conducted under the provisions of Ark. Stat. Ann. § 19-1605.1 (Supp. 1963) which sets out the procedure for discharge or reduction in rank of police and fireman under civil service. The original statute, enacted in 1949, provided for appeal from the Board of Civil Service Commissioners to the Circuit Court, and trial before the court would be on the transcript of the civil service commission hearing and "such other evidence that the parties desire to introduce, provided same is legal, relevant and competent." In considering this statute in 1951 in *City of Little Rock* v. *Newcomb,* 219 Ark. 74, 239 S. W. 2d 750, this court said that "the Legislature . . . intended to provide for a de novo hearing by the circuit court" and concluded this statement with: "and that this court [the Supreme Court] should hear the matter de novo on the entire record before the circuit court, as in chancery cases."

The Legislature amended this statute in 1959, part of the amendment reading as follows:

"The Circuit Court shall review the Commission's decision on the record and may in addition hear testimony or allow the introduction of any further evidence upon the request of either the City or the employee, provided such testimony or evidence be competent and otherwise admissible. A right of appeal is also given from any action from the Circuit Court to the Supreme Court of the State of Arkansas, and such appeal shall be governed by the rules of procedure now provided by law for appeals from the Circuit Court to the Supreme Court."

In 1960 the question of right of trial de novo in circuit court again arose in *Campbell* v. *City of Hot Springs,* 232 Ark. 878, 314 S. W. 2d 225, and in affirming this right this court quoted with approval from *City of Little*

*Rock.* v. *Newcomb, supra,* including the phrase. quoted above, "and that this court should hear the matter de novo . . ." without further discussion. Although the question of right of trial de novo in the Supreme. Court had not been directly raised, this court in *City of Little Rock* v. *Tucker,* 234 Ark. 35, 350 S. W. 2d 531 (1961), cited *City of Little Rock* v. *Newcomb, supra,* as authority for "on an appeal from the decision of the circuit court, the matter is presented here de novo on the entire record and is viewed as chancery cases are here," and recently in *McNeal* v. *Civil Serv. Comm. of City of Little Rock,* 237 Ark. 301, 372 S. W. 2d 614 (1963), we stated: "In a proceeding of this kind we review the evidence de novo, as in chancery. *City of Little Rock* v. *Tucker,* [*supra*]." Despite this dista, the question of right of trial de novo in the Supreme Court in such cases has been squarely presented here for the first time since the 1949 law was amended. In the tradition of our efforts to clarify ambiguities as they are discovered, suffice it to say the 1959 amendment to § 19-1605.1 (*supra*) continues to provide for trial de novo in circuit court but not in the Supreme Court. On appeals from circuit court, the Supreme Court determines whether the verdict or trial court's finding of fact is sustained by substantial evidence. *Duty* v. *Gunter,* 231 Ark. 385, 331 S. W. 2d 111. The words of the statute, "such appeal [to this court] shall be governed by the rules of procedure now provided by law for appeals from the Circuit Court to the Supreme Court," permits no other interpretation.

Thus the question here presented is whether there is substantial evidence to support the de novo finding of the circuit court that appellant's suspension should be sustained.

After passage of ordinance No. 3133 in 1952, the policy of the civic service commission was to permit exceptions to the ordinance where, in the opinion of the department chief, the nonresident employee lived close enough to properly perform his duties. Appellant began to build a home at Sulphur Springs and before it was completed in 1956, the commission reversed its policy

and would allow no new exceptions to the ordinance. Appellant testified that at the time of this commission ruling, one of the other firemen was able to move into his unfinished house in time to be excepted, but that appellant's house wasn't far enough along for that. This admittedly was the start of appellant's private feud with the city. Appellant completed his house after the ruling went into effect and, after giving the fire department his brother's Pine Bluff address as his own in direct violation of a fire department rule, proceeded to move into the Sulphur Springs house and remained there until Fire Chief Alford discovered the fact and suspended him on May 1, 1959. This suspension was lifted by letter of May 7, 1959, on condition that appellant move back into the city, requiring him to notify the chief in writing the date and location he moved to, and expressly stipulating that: "You will also be required to remain in the City as long as you are employed in or on the Fire Department or until you are given permission to move out." Appellant signed a statement that he was a resident of Pine Bluff as of that date, May 7th, and gave a Pine Bluff address. Appellant moved out to Sulphur Springs again in 1960. Chief Edwards testified that he learned this when he took office succeeding Chief Alford and wrote appellant on January 31, 1961 that he lived too far out. Appellant apparently moved back into the city again at that time.

Since Chief Edwards' promotion to that office, there is evidence that he has allowed no exceptions to the non-resident ordinance other than the two existing at the time he took office. (These two exceptions are firemen who live outside the city limits, one a block and the other a mile, and have for a number of years, one of them since before passage of the ordinance.) It is uncontroverted that Chief Edwards refused in 1961 to permit a firemen to move across the street, where the street was the city limit and the move would have placed him outside the city.

From the evidence presented, the requirements of the ordinance, the policy of the commission, the position

54

of the chief and the determination of appellant to flout them all are quite clear. We cannot say there is no substantial evidence to support the finding of the circuit court sustaining appellant's suspension for insubordination.

Affirmed.