CITY OF LITTLE ROCK,
Arkansas *v.* Sgt. Bill BATES

CA 80-226                                    607 S.W. 2d 68
Court of Appeals of Arkansas
Opinion delivered October 22, 1980
Rehearing denied December 3, 1980

*R. Jack Magruder, III*, City Atty., by: *Lester A. McKinley*, Asst. City Atty., for appellant.

*McArthur & Lassiter, P.A.*, for appellee.

MARIAN F. PENIX, Judge. Appellee Bill Bates was dis-

charged from the Little Rock Police Department on April 5, 1977 after fifteen years as a law enforcement officer. He appealed to the Little Rock Civil Service Commission where his termination was affirmed. The Commission's determination was appealed to Pulaski County Circuit Court. The case was tried de novo and was reversed. The Court ordered Bates reinstated to his former position of sergeant without back pay. The Court also ordered Bates be paid for 44 1/3 days of sick leave which had accrued at the time of dismissal. The City of Little Rock appealed.

The events leading up to Bates' discharge arose from circumstances involving Bates' domestic troubles, and his concern about the welfare of his children — particularly his fifteen year old daughter Colleen.

On June 21, 1976 Bates received a reprimand for an incident involving a Linda Shelton. The record reflects Linda Shelton was arrested and unnecessarily detained because of mistaken identity. Bates was held responsible.

On September 30, 1976 Bates received a five day suspension as a result of a September 23 incident. While in uniform and on duty Bates drove to 7323 Missouri Street, the home of Ann McGaugh. He had no official reason for going to that address. His visit was entirely for personal reasons. Bates' ex-wife, his fifteen year old daughter and her boyfriend were present at the address. Bates created a disturbance threatening to kick in the door. Ms. McGaugh filed a complaint with the Little Rock Police Department. On the same evening Bates transported his daughter to North Little Rock in a police vehicle. The suspension letter states he violated Sections 5, 6, 16 and 25 of the Police Department's Rules and Regulations. Section 5 provides for disciplinary action in the event of dereliction on duty. Section 16 defines Conduct Unbecoming an Officer or a Gentleman and what constitutes departures from such conduct. Section 25 forbids a member of the police department from leaving a place of duty or assignment without proper authority. The letter of suspension warned: ". . . and should you be involved in any similar incident in future more severe disciplinary action will be taken against

you up to a reduction in grade and/or dismissal from the police service." Bates did not appeal this suspension.

On January 1, 1977, while off duty, Bates went to his ex-wife's home and, according to her uncontradicted testimony, physically assaulted her. He was at her house picking up his two younger children. Bates does not deny hitting his ex-wife, but states: "I think she grabbed me, grabbed this suit and tried to bite me on the leg, and if I struck her, it was unintentional, just hitting her." His ex-wife called the police and reported the incident.

On January 30, 1977, Bates left his duty thirty minutes early, and while still in uniform went to his ex-wife's home about 6:55 a.m. He began to beat on the door. He entered the house through the kitchen window. His daughter Colleen was in one bedroom and her boyfriend, Johnny Maness, was in another bedroom. Bates ordered Johnny to leave, which he did. Later Johnny returned to take Colleen to church. As they drove onto the Interstate Highway Bates saw them. He chased them at a high rate of speed, but Johnny and Colleen lost him. Later in the day they returned to Colleen's house. Bates was concealed inside the house. Johnny testified Bates grabbed him by the hair and struck him with his fist and kicked him with his boots. Colleen testified she didn't see Bates strike Johnny but she saw him holding Johnny's neck with both hands in a choking manner.

On February 10, 1977 Bates went to his ex-wife's home, and in the presence of two friends with whom she was drinking coffee, he proceeded to direct obscene and profane language towards her. She reported this incident to the police.

On March 18, 1977 around 2:00 a.m. Bates' daughter Colleen and Johnny Maness were asleep on the couch in Bates' ex-wife's home. Bates rang the doorbell. Johnny hid in one of the bedrooms. Colleen let Bates in. He left shortly but returned in about thirty minutes. He came through the door and said "I'm going to kill that boy, where is he at." Johnny ran from the house and hid in some nearby woods. Johnny saw Bates' car going up and down the street and heard

someone letting air out of the tires of his car. Johnny later found the stems to his tires cut off. After chasing Johnny, Bates returned to his ex-wife's house. The front door was locked. Bates allegedly kicked in the front door and also kicked in the door leading to Colleen's bedroom. Pulaski County and Little Rock police officers arrived on the scene and took him home. They found he had been drinking and felt he was in no condition to drive. Bates admitted he had had two drinks a couple of hours earlier.

On April 5, 1977 Chief of Police W. D. Gibson wrote Bates informing him he had been terminated for violating Rules and Regulations of the Little Rock Police Department. The letter stated he had violated Section 16 on January 7, 1977 by creating a disturbance involving an assault upon his ex-wife.

The letter stated Bates had further violated Section 16 on January 30, 1977 by committing criminal trespass at his ex-wife's house and physically assaulting Johnny Maness. Section 16 is as follows:

> No officer of this department shall conduct himself in a manner unbecoming of an officer or a gentleman, either on duty or off duty.

The letter stated Bates had violated Section 15 also on January 30, 1977. The letter pointed out this Section was violated February 10, 1977 and again on March 18, 1977.

Bates was also charged with violation of Section 22 on March 18, 1977. Section 22 reads:

> The following are prohibited: C. The excessive use of intoxicating liquor.

In Bates' appeal to the Circuit Court he alleged his troubles all stemmed from his concern over his fifteen year old daughter's relationship with Johnny Maness, and because of his worry he was incapable of performing his duties. Johnny Maness is a high school drop-out who had been convicted of theft of property.

The City of Little Rock chose to stand on its record from the Civil Service Commission hearing. Before the Circuit Court, Bates introduced further witnesses. Bill Sanford, Captain of the Little Rock Police Department testified as to Bates' performance as a police officer prior to the termination. His testimony actually did not shed much light as to Bates' temperament or performance during the period leading up to the termination. He judged Bates as an average officer and said he had never seen any sign of alcohol consumption on the job by Bates.

Ken Durham, a Sergeant in the Criminal Investigating Division of the Pulaski County Sheriff's office, testified he had worked with Bates as his immediate supervisor at the time of the dismissal. He stated he would classify Bates as above average, that Bates did not drink on duty and generally did the work required of him under supervision. When on cross-examination he was faced with a letter of reprimand he had written to Bates June 21, 1976 concerning the incident involving a Linda Shelton, Durham stated he did not recall whether or not he was ordered to issue the reprimand.

Vernon Lester, a Little Rock Police Department patrolman, classified Bates as being "as good as any other supervisor I have worked for in the Little Rock Police Department." However, he was not working with Bates at the time the series of incidents began.

Over the objection of the city, Jim Burnett, former Municipal Judge in Clinton, Arkansas, testified that in the months following Bates' dismissal he had observed him as he worked as a law enforcement officer for the town of Damascus. Burnett stated Bates conducted himself in a very professional manner.

Another witness, Gus Anglen, Sheriff of Van Buren County, testified Bates was also one of his deputy sheriffs. He stated Bates was a very responsible officer, and certainly capable of dependable performance as an officer.

Colleen Bates, daughter of the appellee, testified over objection of the City. The City contended she had testified by

affidavit before the Civil Service Commission, and therefore any testimony would be cumulative. The Court permitted her to testify. Colleen testified her former statements before the Commission were exaggerated because she was pushed by members of the Little Rock Police Department into making complaints about her father. She testified her father had never actually kicked a door down — that in fact he had a key to the house at the time he allegedly kicked in the door, and that the key had been given him by his ex-wife. She testified to the hostility which had grown between her father and herself because of her relationship with Johnny Maness. She stated her father now has custody of all three children including herself. She said he was short tempered concerning his children and their surroundings. She said she rebelled against her father until 1978 but has since gone to live with him. She also said she didn't recall stating her father tried to choke Johnny, nor did she recall stating her father slung her across the room. She said she didn't remember her Dad saying "if that boy is in here, I am going to kill him." She did say she recalled stating her father "threw me down and that is when he kicked me in my bedroom." and that statement is true. She testified the statements made which were in the record before the Commission might be different if made at a later time because at the time she made them she was rebelling and wanting to hurt her father. Also, she said she was pressured by police officers to make such statements. She said she didn't think she was in any condition to be giving any statement at the time she gave them to police officers questioning her.

Bates testified before the Circuit Court that all the incidents leading to his dismissal related to his children. He said he could get no help from his ex-wife, Johnny Maness' parents nor anyone else. He testified he was under a lot of mental strain and pressure at the time he appeared before the Commission, and realized he couldn't function properly until he got his problems solved. He testified he was on sick leave when he was informed of his dismissal. By August, he was able to return to work as a police officer and he went to work at Damascus. At the present time he has custody of his three children. He testified his problems were resolved and he would like to return to the Little Rock Police Department.

The Circuit Court found from the evidence Bates is capable of performing as a responsible police officer. The Court, as evidenced by this finding, did not deal with the issue before it. The issue is not whether the appellee is now some three years after his dismissal, capable of performing as a police officer, but whether the decision to dismiss him from the force was proper. Reinstatement is not the issue, but rather the dismissal.

The Circuit Court heard this case de novo. *Petty* v. *City of Pine Bluff*, 239 Ark. 49, 386 S.W. 2d 935 (1965); Ark. Stat. Ann. § 19-1605.1. The Circuit Court also has discretion in hearing additional testimony when a case is appealed to the Civil Service Commission. Ark. Stat. Ann. § 19-1605.1. This discretion, however, was abused by the trial court. The testimony of those witnesses who knew only of Bill Bates' performance and mental state subsequent to the dismissal should not have been allowed. This did not bear on whether the dismissal was proper at the time. His subsequent activities or his ability to perform at this time have nothing to do with his ability to perform in April of 1977 and whether the incidents reported were violations of the Rules and Regulations of the Little Rock Police Department for which dismissal was warranted.

We find the decision of the trial court to be clearly erroneous. The uncontracted evidence reveals violations of Sections 5, 6, 16 and 25 of the Rules and Regulations. These regulations cover conduct unbecoming a gentleman, behavior which would subject the officer to justified unfavorable criticism, prohibition of excessive use of alcohol, and obedience to the laws of the United States, the state of Arkansas and the City of Little Rock. The uncontradicted evidence shows a violation of the law in an assault on both Johnny Maness and Bates' ex-wife Karol.

The appellee attempted to justify the repeated violations of the Rules and Regulations by characterizing them as private personal business which occurred while he was off duty. These Rules and Regulations do not draw a distinction between behavior which is acceptable while on duty and behavior which is acceptable while off duty. Furthermore,

these incidents affected private citizens and cannot be classified as merely personal and private business.

The Supreme Court has spoken to the issue of the type of conduct required of police officers.

> We thus have a police lieutenant who was regularly working on the city police force of Hot Springs, but who, in his off time, was working in a gambling house in that City. The city police force of Hot Springs cannot condone its policeman in such violations of law. . . . A policeman in a municipality cannot represent the City as a policeman part of the twenty-four hours, and then assist in the operation of a gambling place of business the rest of the time. *Campbell* v. *City of Hot Springs*, 232 Ark. 878, 341 S.W. 2d 225, 228 (1961).

Again, in *McNeal* v. *Civil Service Commission of the City of Little Rock*, 237 Ark. 301, 372 S.W. 2d 614, 616 (1963), the Court stated:

> We have no hesitancy in declaring that McNeal's conduct violated the city's Rule 21. His behavior was unbecoming to a gentleman; it was of such a nature as to bring him into disrepute as a municipal employee. It must be realized upon reflection that in our system of self-government it is essential that those in the public service demonstrate a high sense of morality. Public employment must be regarded as something more than a mere opportunity to earn a selfish livelihood. If those privileged to be in the public service do not display that basic integrity that the government itself must have, how can the people be expected to maintain their confidence in the system?

Finding the decision of the trial court is not supported by substantial evidence, we must reverse. *Briley* v. *Little Rock Civil Service Commission*, 266 Ark. 394, 583 S.W. 2d 78 (1979); *Civil Service Commission of Harrison* v. *Reid*, 261 Ark. 42, 546 S.W. 2d 413 (1977); *City of Little Rock* v. *Hall*, 249 Ark. 337, 459 S.W. 2d 119 (1970).

Reversed.