The Honorable Jay Bradford State Senator Post Office Box 8367 Pine Bluff, Arkansas 71611-8367
Dear Senator Bradford:
This is in response to your request for an opinion on the following questions:
 1. Are residency requirements considered to be a "normal and routine day-to-day operation" of a police or fire department?
 2. What would fall under "normal and routine day-to-day operations" for a police and fire department as defined in A.C.A. § 14-51-212?
 3. If residency requirements are not a "normal and routine day-to-day operation" of a police or fire department, in a city with mayor-council form of government and a civil service commission, who has paramount authority to set requirements — the civil service commission or the city council?
Although a conclusive resolution of this issue will require either legislative clarification or a judicial ruling, I believe that a court would probably conclude that residency requirements for police officers or fire fighters fall within the "normal and routine day-to-day operations of a police or fire department" as contemplated in A.C.A. §14-51-212.
Question 1 — Are residency requirements considered to be a "normal androutine day-to-day operation" of a police or fire department?
Question 2 — What would fall under "normal and routine day-to-dayoperations" for a police and fire department as defined in A.C.A. §14-51-212?
Chapter 51 of Title 14 of the Arkansas Code Annotated addresses civil service for police and fire departments in cities of the first class. Arkansas Code Annotated § 14-51-212 (Supp. 1995) provides:
 (a) The powers and duties of every civil service commission established pursuant to this chapter shall be and are hereby expressly limited such that the said commission shall not have any control nor shall said commission attempt to exercise any control over the normal and routine day-to-day operations of a police or fire department, directly or indirectly.
 (b) No provision of this chapter shall be construed to provide authorization to said commissions to have such authority.
See also A.C.A. § 14-51-301(c) (Supp. 1995) ("The commission shall adopt such rules not inconsistent with this chapter for necessary enforcement of this chapter, but shall not adopt any rule or rules which would authorize any interference with the day-to-day management or operation of a police or fire department"). In Opinion 94-274 (copy enclosed), I opined that a civil service commission may adopt rules that govern broadly, but the rules may not interfere with the day-do-day management or operation of the police and fire departments. I also opined that rules adopted by the city council, by contrast, must be limited to matters involving the day-to-day management or operation of the police and fire departments. Id.
It should be noted initially that the phrase "normal and routine day-to-day operations," as it appears in § 14-51-212, has not been defined by the legislature, and this office cannot provide a controlling definition of a term where the legislature has not seen fit to provide one. Rules of statutory construction, however, dictate that the phrase be construed in order to give effect to the legislative intent. SeeVanderpool v. Fidelity Cas. Ins. Co., 327 Ark. 407, 939 S.W.2d 280
(1997). In addition, a court will construe the statute just as it reads, giving words their ordinary and usually accepted meaning in common language. See Bob Cole Bail Bonds, Inc. v. Howard, 307 Ark. 242,819 S.W.2d 274 (1991).
A decision of the Arkansas Supreme Court offers some guidance. InDonaldson v. Taylor, 327 Ark. 93, 936 S.W.2d 551 (1997), the court recognized that civil service commissions are prohibited from exercising any control over the "normal routine day-to-day operations of a fire department" pursuant to § 14-51-212. The City of Pine Bluff redefined a sick day as eight hours so that firemen missing an entire twenty-four hour shift would be charged three days sick leave rather than only one day of sick leave. On appeal, the firemen contended that the new city policy violated the Pine Bluff Civil Service Commission's regulations which defined "working day" as meaning "tour of duty." In upholding the city's new definition, the court noted that the civil service commission's regulations had little meaning with regard to sick leave. The court stated that the city clearly had the authority to operate and manage its fire department, including its fire fighter's hours of duty, holiday compensation, annual vacation, and sick leave. See also Op. Att'y Gen. 92-258 (strong argument that regulating the wearing of uniforms on off-duty jobs falls within the day-to-day management or operation of the police department); Frego v. Jonesboro Civil Service Comm'n, 285 Ark. 35,684 S.W.2d 258 (1985) (court upheld demotion of lieutenant pursuant to regulation of the Jonesboro Fire Department, adopted by city council, that provided for testing fire department lieutenants on their knowledge of the location of streets and fire hydrants); Petty v. City of PineBluff, 239 Ark. 49, 386 S.W.2d 935 (1965) (court upheld suspension of fireman for violation of city ordinance that required police or fire department employees to live within such close proximity of the city as to not interfere with the proper performance of their duties).
The Arkansas Supreme Court has also stated that the express purpose of the statutes authorizing the establishment of city civil service commissions is to review the employment, discharge, and discipline proceedings of the city fire and police departments. Williams v. Taylor,311 Ark. 94, 841 S.W.2d 618 (1992). In furtherance of that purpose, A.C.A. § 14-51-301 requires that the civil service commission adopt rules that provide for the "qualifications of each applicant for appointment to any position on the police or fire department." In interpreting a comparable phrase, the Louisiana Supreme Court concluded that a residency requirement does not fall within a civil service commission's express or implied power to adopt rules regulating qualifications of public employees. New Orleans Firefighters Ass'n Local 632 v. New Orleans,590 So.2d 1172 (La. 1991). The court stated that "qualifications" for employment refer to requirements as to education, experience, or similar factors. Id.; see also Manion v. Kreml, 264 N.E.2d 842 (Ill.App.Ct. 1970) (civil service commission establishes standards for admission to and dismissal from the police force, while the Police Board is concerned with the day-to-day functioning of police department; requirement of residency is more properly left to the decision of agency responsible for the mechanics of operating the police department).
Based upon the foregoing principles of statutory construction and the relevant case law, it appears that a court would probably conclude that residency requirements for police officers or fire fighters fall within the "normal and routine day-to-day operations of a police or fire department" as contemplated in A.C.A. § 14-51-212. A conclusive resolution of this issue will, however, require either legislative clarification or a judicial ruling.
Question 3 — If residency requirements are not a "normal and routineday-to-day operation" of a police or fire department, in a city withmayor-council form of government and a civil service commission, who hasparamount authority to set requirements — the civil service commission orthe city council?
In light of my response to questions one and two, an answer to this question is unnecessary.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh