Robertson v. Read.

*SPECIFIC PERFORMANCE.*

Reverse the judgment and remand the cause with instructions to overrule the demurrer.

| 52 | 381 |
|----|-----|
| 55 | 99 |
| 55 | 375 |

---

## ROBERTSON v. READ.

1. VENDOR AND VENDEE: *Bond for title: Rights of parties.*

   Where land is sold by a bond for title, the return of the bond to the vendor through the action of a third person, without the knowledge or consent of the vendee, and the destruction of the latter's note for the unpaid purchase money, will not extinguish the equitable title acquired by his purchase. And a subsequent sale of the land by the vendor to such third person, merely subrogates the latter to the vendor's rights, and he will hold not as owner, but as mortgagee.

2. MORTGAGEES: *Compensation for improvements: Liability for rent.*

   A mortgagee who himself occupies the mortgaged premises, consisting of a farm, is not entitled to pay for permanent improvements made without the owner's consent, and is chargeable with such rent only as the land would have yielded without the improvements.

APPEAL from *Drew* Circuit Court in Chancery.

C. D. WOOD, Judge.

*W. S. McCain* and *Wells & Williamson*, for appellant.

1. Equity will not decree specific performance when the contract has been voluntarily surrendered and abandoned, especially when there are matters of estoppel, and the rights of third persons have intervened. *33 Ark., 63; 34 Ark., 34; 8 Paige, 473.*

2. Where a husband has abandoned his wife and children, the wife becomes the agent of the husband so far as concerns the property left in her possession. *Mansf. Dig., sec. 4953.*

3. Absence from the *county*, as alleged in the complaint, does not raise the presumption of death. *Ib., 4597.*

4. It was error to hold appellant liable for rent of land which he cleared after his purchase. *50 Ark., 447; 33 id., 490.*

5. Appellant bore no fudiciary relation to appellees. He was at best no more than a mortgagee in possession, who is not liable for rent of improvements made by him. *42 Ark., 456; Jones on Mortg., 1127; 4 Kent, 166; 32 Minn., 189; 7 Iowa, 134; 14 Vt., 513; 1 Hill, S. C., 501; 1 Johns. Chy., 385; 4 Cowen (N. Y.), 168 ; 19. Wisc., 235 ; 56 Miss., 352 ; 131 U. S., 107–9; 8 Wheat, 1; 10 Paige, 49; 21 Hun., 36; 65 Ala., 511; 38 Miss., 401 ; Malone on Realty, 132; Boone on R. Prop., 169; Sedg. & W. on Tr. of Title to Land, sec. 578.*

*W. F. Slemons,* for appellees.

The attempted cancellation of the bond for title did not affect appellee's rights. *49 Ark., 469.* Bob Robertson not having been heard of for twelve years, was dead, in law. *Mansf. Dig., sec. 2850.* Brass was the brother-in-law of the widow, and uncle of the children, and standing in this close relation, committed a fraud on them.

The evidence shows that the amount paid by Bob Robertson, the amount of assets converted by Brass, and the rents reimbursed Brass for any amount he may have paid on the land, and the decree is right, and should be affirmed.

HEMINGWAY, J. This is a suit by the widow and heirs at law of one Bob Robertson, against Brass Robertson, his brother, to establish a trust in a tract of land.

The material facts of the case are as follows : In 1871 or 1872 one Thomas Trotter sold the land to Bob Robertson, on a credit, for $660, giving his title bond and taking notes for the purchase money, bearing interest until paid at 10 per cent. per annum. Bob Robertson entered into possession and occupied the land as a homestead, Brass, who was younger, living with him. Bob paid $160 on the notes. In 1874 he fled

the country, leaving his wife, children and brother in posses-sion of the land.   In 1875, after the last of the purchase money notes had matured, Trotter notified Brass that unless they were paid, he would proceed against the land.   Brass procured the title bond from Bob's wife, and returned it to Trotter, who, in-tending to cancel the sale, destroyed it and the notes.   The payment made by Bob liquidated the interest, but did not re-duce the principal of his debt.   Brass and Bob's family re-mained upon the land during 1875 as tenants of Trotter.   About the close of that year Trotter sold the land to Brass.   He paid part of the price in cash, and gave his notes for the balance; he received a bond for title.   He subsequently paid the notes. It does not appear from the evidence that Brass acted other-wise than in good faith, either in attempting to cancel the bond to Bob, or to acquire title to himself.   When he purchased there was due on Bob's notes $660; and there were twenty acres of the land in cultivation of the rental value of three dollars per acre per annum.   The land is not shown to have had any other rental value.   Brass subsequently cleared more of the land and made other improvements; he asks that he be paid therefor in case his title fails.

The court below found that Brass had received assets from Bob to apply on his notes, which, with the rents received by him, was sufficient to extinguish them.   As to such assets the testimony is very indefinite and unsatisfactory, and we cannot find that any were received by Brass for that purpose.

1. VENDOR AND VEN-DEE: Bond for title.

The effect of the title bond to Bob, was to vest in him an equitable title to the land, and to retain in Trotter the legal title as security for the purchase money.   The return of the bond to Trotter was made without Bob's knowledge or con-sent; such being the case, Trotter did not acquire Bob's title by its delivery to him and the destruction of the notes.

When Brass took possession under his purchase, he held not as owner but as mortgagee, being subrogated to Trotter's right as such.   *Teaver et al. v. Eakin,* 47 Ark., 528.

Robertson v. Read.

<div style="margin-left:2em">A mortgagee is not entitled to be paid for improvements</div>

2 MORT-
GAGEES: made upon the mortgaged premises, further than is necessary
Improve-
m e n t s : to keep them in repair.   The improvements may be of perma-
Rents.
nent benefit to the estate, but unless made with the consent
and approbation of the owner no allowance can be made for
them.   The mortgagee has no right to increase the burden of
redeeming.   If he chooses to make improvements, he may en-
joy their use during his possession, but upon redemption they
inure to the benefit of the estate.   *Jones on Mort., sec. 1127.*

A mortgagee who himself occupies the premises, especially
if they consist of a farm, upon which money and labor must
be bestowed to produce annual crops, is chargeable with such
sums as are a fair rent of the premises (*Jones on Mort., sec.
1122*); but he should not be charged an increased rent, caused
by improvements upon the land for which he is denied com-
pensation.   Justice is done by charging him with the rent
which the land would have yielded as it was without his im-
provements.   To the extent that the rental value is increased
by them, he should not be held to account.   *Jones, McDowrell
& Co. v. Fletcher, 42 Ark., 456; Tatum v. McClellan, 56 Miss.,
352; Jones on Mort., sec. 1127, and cases cited.*

The question of limitation was not raised by the pleadings
of appellant nor considered by us.

The appellees are entitled to redeem the lands upon pay-
ing to appellant the amount due on Bob's notes.   He should
be credited by the sum of $660, the amount due on the notes
when he purchased, less $60, the rent for 1875, with interest
from January 1, 1876, at 10 per cent. per annum; but he
should be charged with the sum of $60 for the rent of the land
for each year beginning with 1876, which should be credited
at the end of each year on the amount due him.   If the ap-
pellees pay the sum so due him, they are entitled to have the
title vested in them ; if they fail to pay it within a reasonable
time, the land should be sold to satisfy it.

The judgment is reversed, and the cause remanded for a decree and proceedings thereunder, in accordance with the law as herein declared.