F. L. MILES, ET AL v. F. A. TEAGUE, ET AL

5-4908                                                   441 S.W. 2d 799

Opinion Delivered June 9, 1969

*Putman, Davis & Bassett* for appellants.

*Hardy W. Croxton* for appellees and cross-appellants.

FRANK HOLT, Justice. The appellees brought this action to foreclose a second mortgage. In January, 1966 the appellees sold their turkey and stock farm to the appellants for a total price of $140,000.00 which included some farm machinery and other personal property. The appellants assumed an existing first mortgage in the amount of $42,500.00, payable $5,000.00 annually. They gave appellees a note for $47,500.00, secured by a second mortgage on the farm, payable at the rate of $4,-750.00 annually beginning on January 15, 1967. By oral agreement, the purchase price balance of $50,000.00 was considered as a down payment and to be paid by appellants as an unsecured open account.

Appellees filed their foreclosure suit in February, 1968 alleging that no payments had been made on the note and asked for judgment against the appellants in the sum of $47,500.00, plus accrued interest, costs and

attorney fees. Appellees also alleged that the appellants had agreed to make a $50,000.00 down payment of which "the sum of $25,000.00 was to be allocated for the personal property and $25,000.00 for the real property." In their answer the appellants denied the default and alleged that they were current in the payment of all installments due on the second mortgage and that they had made sufficient payments on the personal property to entitle them to an agreed bill of sale. The appellants asked that the appellees' complaint be dismissed and that appellees be ordered and directed to deliver to appellants the warranty deed, together with a bill of sale to the personal property. With the issues thus joined, the cause was submitted to the chancellor.

The appellants contended that according to the oral agreement their payments were first to be applied to the two mortgages and then any balances were to be applied to the payment of the personal property first and then to the real property. Further, that when the sum of $25,000.00 was paid on the down payment, appellees were to deliver a bill of sale to the personal property. Appellants admit that the $50,000.00 down payment has not been paid in full by them. The appellees assert, however, the oral agreement was that all of the net payment received from appellants was to be first applied to the full $50,000.00 down payment account and the deed and bill of sale were not to be delivered until there was payment in full; that there was a balance due on the full down payment; that all payments had been applied entirely to the down payment, with appellants' knowledge; that no payments had been made on the second mortgage and, therefore, it was in default.

The chancellor found:

"That nothing had been paid upon the principal or interest on the note. That said note is now in default, and plaintiffs are entitled to a judgment on said note. That said note was secured by a real estate mortgage ...

"The court finds that the agreement between the parties was that payments made by defendants would first be applied to the $25,000.00 sale price of the personal property, and payments would next be applied to the remaining $25,000.00 of the down payment.

"That the said plaintiffs shall have and recover from the said defendants the sum of [$54,981.25] principal and interest due and interest at the rate of 6 percent per annum from this date, and the additional sum of $4,750.00 for attorney fees and interest at the rate of six percent per annum from this date until paid. The Court finds that the defendants have paid the plaintiffs in full for the personal property described in said Bill of Sale, and the said plaintiffs are ordered to deliver the Bill of Sale to said personal property to the defendants and the title of said personal property is vested in the defendants.

"While it is apparent that monies are due plaintiffs from the defendants in connection with the down payment, the defendants agreed to make upon the lands and property in addition to the debt evidenced by the note and mortgage, relief was not sought for this item in the pleadings. That the plaintiffs are not required to deliver the deed to the above lands to the defendants in the event of the payment of the judgment herein provided for, until the balance of the agreed down payment is paid in full ..."

The chancellor ordered foreclosure of the second mortgage and delivery of the bill of sale.

On appeal, the appellants contend for reversal that the trial court erred in holding appellants in default on the note and mortgage and in rendering judgment for the appellees thereon, and, further, that the appellees are

precluded by the doctrines of waiver and estoppel from accelerating the payment of the note and mortgage.

On cross-appeal, the appellees assert that the Court erred in holding that the payments made by the appellants would first be applied to the personal property and that the personal property now belongs to the appellants. Further, that the Court erred in not sustaining the appellees' motion and plea that the pleadings be amended to conform with the proof wherein appellees sought judgment for the balance of the down payment.

The appellants were permitted to take possession of the farm and personal property before making any payments. During 1966 appellants paid to the appellees $32,000.00 in cash. It is appellants' position that during the years of 1966 and 1967 the appellees received from appellants a total of approximately $65,000.00 which included cash payments together with income from the operation of the farm by the appellants. Further, that appellees had refused a tender of a $20,000.00 cash payment about a month before the foreclosure action. The appellees' position is, however, that during this period they had only received from the appellants the gross sum of $53,520.84 out of which the appellees had to pay the sum of $26,261.02 for agreed necessary expenses in the operation of the farm which included insurance, taxes, and other agreed items, leaving a balance of $27,259.82 as net receipts from the appellants.

There was evidence by the appellees that the oral agreement provided that the $50,000.00 down payment would be paid immediately; that appellees would first deduct from the receipts the payments of certain costs that would become necessary in the operation of the farm as well as taxes, insurance, etc.; that any net payments would then be applied to the $50,000.00 unsecured open account until it was fully paid; that this application of the payments was with the full knowledge of appellants, leaving a balance of $22,740.18 due on the down payment;

that no payment had been applied on the second mortgage; that no payment had been made by appellants on their note and mortgage; that appellants had been warned repeatedly by the appellees of the default and on two occasions appellees' attorney had written appellants about their delinquency on payments on this mortgage; that appellees had exercised forbearance during two and one-half years in bringing this foreclosure proceeding and further, in the collection of the full down payment; that appellees were to retain and not record the deed and second mortgage nor deliver the bill of sale to the personal property until the full down payment account was paid; that appellees had not agreed to accept a $20,000.00 cash payment a month before foreclosure; that if appellees had accepted such a payment and applied it according to their oral agreement there would still be a balance due on the open account.

The appellants do not dispute the $50,000.00 account as a down payment. They do dispute the oral agreement as to the priority in the application of their payments and as to when they would be entitled to the bill of sale to the personal property. They offered evidence that their payments were first to be applied to the two mortgages and then any balances were to be applied first to payment of the personal property; that whenever their payments on the open account amounted to $25,000.00, it was understood that the bill of sale, which was itemized and completed, would be delivered to them; that this was necessary and so understood for purposes of needed collateral and additional financing which they had made an effort to do; that it was understood that appellants could not make a full and immediate down payment; that their payments depended upon the profits from the purchased farm and the sale of property they owned in another state; that appellants had offered a $20,000.00 down payment to appellees about a month before foreclosure proceedings were started and that appellees insisted upon a $25,000.00 payment plus a $4,-

000.00 boat and a rewriting of the deed, note and mortgage, to which appellants would not agree.

It is a familiar rule of law that "as between debtor and creditor, where the debtor fails to designate the debt and there are several debts to which the payment can be applied, the creditor may apply it as he chooses." *Cooper* v. *Sparrow,* 222 Ark. 385, 259 S.W. 2d 496 (1953); *Hawkins* v. *Hawkins,* 200 Ark. 38, 137 S.W. 2d 904 (1940); *Johnson* v. *Gammill,* 231 Ark. 1, 328 S.W. 2d, 127 (1959); *Snow* v. *Wood,* 163 Ark. 280, 259 S.W. 733 (1924). Further, the burden was on the appellants, the debtors, to show that their payments were given and to be applied first in satisfaction of the installments due on the second mortgage rather than upon the agreed down payment. *Hill* v. *Green,* 127 Ark. 406, 192 S.W. 209 (1917). On this issue, as well as the other facets of this case, the evidence was in conflict as to the oral agreement between the parties. Their testimony and exhibits tended to support their respective contentions. When we, on appeal, consider the question of the preponderance of the evidence, the judgment of the chancellor will be considered as persuasive in situations where "the evidence is conflicting, and evenly poised, or nearly so." *Turnage* v. *Matkin,* 227 Ark. 528, 299 S.W. 2d 831 (1957); *City of Little Rock* v. *Newcomb,* 219 Ark. 74; 239 S.W. 2d 750 (1951); *City of Little Rock* v. *Tucker,* 234 Ark. 35, 350 S.W. 2d 531 (1961). In *Hunter* v. *Dixon,* 241 Ark. 725, 410 S.W. 2d 389 (1966), we said:

> "This court has held in a long line of cases that while chancery cases are tried de novo in this court, a decree of the chancery court will not be reversed where there is a disputed question of fact unless the findings are clearly against the preponderance of the evidence."

Upon a review of the issues presented by the pleadings, the testimony and the exhibits in the case at bar, we

cannot say that the findings of the chancellor are against the preponderance of the evidence.

Affirmed on direct and cross-appeal.