PULPWOOD SUPPLIERS, INC. *v.* FIRST NATIONAL BANK IN STUTTGART

CA 85-503                                    729 S.W.2d 425

Court of Appeals of Arkansas
Division II
Opinion delivered May 27, 1987

*Armstrong & Binns*, by: *Murray F. Armstrong*, for appellant.

*Carl J. Madsen, P.A.*, for appellee.

JAMES R. COOPER, Judge. This appeal concerns two civil suits brought by First National Bank in Stuttgart against Grand Prairie Leasing, Inc., and the appellant, Pulpwood Suppliers, Inc. These causes of action were based upon two notes executed by Grand Prairie to First National Bank which were secured by assignments of various lease agreements in which Grand Prairie was the lessor, and the appellant, Pulpwood Suppliers, Inc., was the lessee. The two cases were consolidated for trial, and the trial

court entered judgment for the appellee, First National Bank. From that decision, comes this appeal.

For reversal, the appellant contends that the trial court erred in denying its motion to dismiss for improper venue; that there was no substantial evidence to support the trial court's finding that, when Pulpwood Suppliers was notified of the assignment of the lease on a loader, the balance due under the lease was $26,610.56; and that the trial court erred in awarding the appellee judgment for the amount of the proceeds of the sale of leased vehicles taken as collateral, because the appellee bank had no perfected security interest in the vehicles. We find no error, and we affirm.

As noted above, this appeal is from judgments entered in two cases which were consolidated for trial. The appellant's first and second points for reversal are based on Arkansas County Circuit Court case number CIV 81-239, involving the assignment of a lease for a Lucky Loader. The appellant's third point arises out of case number CIV 81-240, which involved an assignment taken on seven vehicle leases.

With respect to case number CIV 81-239, the evidence shows that the appellant leased a Lucky Loader from Grand Prairie on March 14, 1979. On March 15, 1979, Grand Prairie executed a note to First National Bank in the amount of $36,868.80. This note was secured by an assignment of the lease of the Lucky Loader to the appellant. By June 4, 1980, the appellant was notified of the assignment; however, on June 13, 1980, the appellant purchased the Lucky Loader from Grand Prairie Leasing for $2,188.24. The appellant contends that this amount was the balance owed to Grand Prairie under the lease agreement.

In the second case tried below, Arkansas County Circuit Court number CIV 81-240, the evidence shows that Grand Prairie executed a note to First National Bank in the amount of $42,338.98. This note was secured by an assignment of seven separate lease agreements, under which Grand Prairie leased seven different vehicles to the appellant. On May 6, 1980, the appellant purchased two of those vehicles from Grand Prairie. On June 4, 1980, Pulpwood purchased the remaining five vehicles from Grand Prairie for the sum of $8,362.54.

As its first point for reversal, the appellant contends that the trial court erred in denying its motion to dismiss for improper venue in case number CIV 81-239. The appellee, First National Bank, filed that case in Arkansas County Circuit Court, seeking judgment against Grand Prairie Leasing, Inc.; Lloyd M. Sivils, chief officer of Grand Prairie Leasing; and the appellant, Pulpwood Suppliers, Inc. Both Grand Prairie Leasing and the appellant were Arkansas corporations. As support for its contention that venue in Arkansas County was improper, the appellant relies upon Ark. Stat. Ann. § 27-605 (Repl. 1979), which provides, in part, that an action against a domestic corporation "may be brought in the county in which it is situated, or has its principal office or place of business, or in which its chief officer resides." The appellant's principal place of business was Cleveland County. Lloyd M. Sivils, chief officer of Grand Prairie Leasing, resided in Jefferson County. The crux of the appellant's argument is that, whereas Arkansas County had formerly been Grand Prairie Leasing's principal place of business, at the time that this action was filed Grand Prairie Leasing no longer had a place of business and was, in fact, a defunct corporation, since its corporate charter had been revoked on November 24, 1980, almost one year prior to the commencement of this action. Thus, argues the appellant, neither of the defendant corporations had a principal place of business in Arkansas County at the time the action was filed, nor did the chief officer of either corporation reside in Arkansas County at that time, and the prerequisites for venue in Arkansas County under Ark. Stat. Ann. § 27-605 were therefore not met.

However, we do not reach the merits of the appellant's argument, for we think that venue in Arkansas County was proper under Ark. Stat. Ann. § 27-621 (Repl. 1979), which provides that "[a]n action on a debt, account, note, or for goods or services may be brought in the county where the defendant resided at the time the cause of action arose." Because Grand Prairie Leasing had its principal place of business in Arkansas County when it defaulted on its note to the appellee and this cause of action arose, we hold that venue was properly in Arkansas County. *See Zolper* v. *AT&T Information Systems, Inc.*, 289 Ark. 27, 709 S.W.2d 74 (1986).

Next, the appellant contends that the trial court's finding

that the balance due under the Lucky Loader lease was $26,610.56 when the appellant was notified of the assignment is not supported by the evidence. At trial, I.E. Moore, president of Pulpwood Suppliers, and Lloyd M. Sivils, president of Grand Prairie Leasing, testified that on June 4, 1980, the day that Pulpwood was notified of the assignment of the Lucky Loader lease, the balance due under that lease was $2,188.24. However, Jack Barber, an officer of First National Bank, testified that the balance due under the lease was $26,610.56. Mr. Barber based his testimony upon calculations he made, based on a payment formula set out in the lease agreement, and upon the assumption that the lease payments were up to date.

The findings of fact of a circuit judge sitting as the finder of fact will not be disturbed on appeal unless, considering the evidence in the light most favorable to the appellee, the findings are clearly erroneous or clearly against the preponderance of the evidence, giving due regard to the opportunity of the trial court to assess the credibility of the witnesses. *Special Insurance Services, Inc.* v. *Adamson*, 20 Ark. App. 8, 722 S.W.2d 875 (1987); ARCP Rule 52. In the case at bar, the appellee produced evidence of the existence of the lease agreement, the assignment of that agreement to the appellee, and the balance due under the terms of that agreement at the time that the appellant was notified of the assignment. The appellant, in turn, offered evidence to show that the balance due under the agreement had been greatly reduced by payment to Grand Prairie Leasing. Payment is an affirmative defense, ARCP Rule 8(c), and the burden of proving payment lies on the party asserting it. *See Miles* v. *Teague*, 246 Ark. 1288, 441 S.W.2d 779 (1969); *Beeson* v. *Beeson*, 11 Ark. App. 79, 667 S.W.2d 368 (1984); 5A *Corbin on Contracts* § 1288 (1964). Under the circumstances presented by this case, and giving due regard to the opportunity of the trial judge to weigh the credibility of the appellant's witnesses, both of whom were interested parties, we cannot say that the trial court's finding was clearly erroneous.

The appellant's final contention regarding case number CIV 81-239 is that the trial court lacked authority to award the appellee a judgment greater than $2,188.24. The appellant states that its purchase of the loader from Grand Prairie Leasing for that sum on June 13, 1980, constituted a sale of the collateral,

and argues that, under Ark. Stat. Ann. § 85-9-306 (Supp. 1985), the appellee's recovery is limited to judgment against the debtor for the proceeds of the sale and a continuing lien on the collateral sold. We do not agree. In addition to having a security interest in the Lucky Loader itself, the appellee was the assignee of the appellant's lease agreement with Grand Prairie Leasing. Moreover, the appellant had notice of the assignment of the lease agreement before it purchased the loader. Where the debtor had notice of the assignment, payment to an assignor, or discharge or release by him, is no defense to the claim of the assignee. *Newton v. Merchants & Farmers Bank*, 11 Ark. App. 167, 668 S.W.2d 51 (1984). Here, the assignment of the lease agreement was itself collateral in addition to the appellee's security interest in the loader. Insofar as the lease agreement was concerned, there was no sale of the collateral in this case, because the assignor and the debtor were without power to interfere with the assignee's interests by terminating the lease without the assignee's authorization. *Block v. Walker*, 2 Ark. 4 (1839); *see also Newton v. Merchants & Farmers Bank, supra*; 6 Am. Jur. 2d *Assignments* § 112 (1963). Thus, Ark. Stat. Ann. § 85-9-306 did not limit the trial court's power to award the appellee judgment for the amount due under the lease agreement at the time the appellant received notice of the assignment, because no sale or other disposition of the lease agreement itself occurred.

■ The appellant's final point for reversal arises out of case number CIV 81-240, involving the assignment of seven vehicle leases between the appellant and Grand Prairie Leasing to the appellee. The argument advanced by the appellant, essentially the same as the foregoing contention treated above, is that the trial court erred in awarding the appellee judgment for the amount of the proceeds of the sale of the collateral, because the appellee had no perfected security interest in the vehicles. Again, we do not agree, because the vehicles were not the only collateral taken by the appellee: an assignment of the lease agreements was given as well. The appellant and Grand Prairie Leasing were unable to terminate the leases without the appellee's consent for the reasons noted above. The trial court did not award the appellee judgment for the proceeds of the sale of the leases, because no sale or termination occurred. This point also lacks merit. *See Block, supra*, and *Newton, supra*.

Affirmed.

CRACRAFT and JENNINGS, JJ., agree.