Peggie PEEK *v.* William C. BRICKEY, et al.

89-240 779 S.W.2d 152

Supreme Court of Arkansas
Opinion delivered November 6, 1989
[Rehearing denied December 11, 1989.]

*Paul D. Capps* and *Sherry S. Means*, for appellant.

*H. Oscar Hirby*, for appellee.

DAVID NEWBERN, Justice. The chancery court awarded a judgment of foreclosure to the appellant, Peggie Peek, who was the mortgagee. She appeals because the court refused to award interest on the mortgage debt which was evidenced by an installment note for $35,000. The principal appellees are William C. Brickey and his wife, Barbara Brickey, who have cross-appealed the chancellor's holding against their contentions of payment or lack of consideration. We hold that the chancellor erred in failing to award interest on the mortgage debt but that his findings on the issues of payment and lack of consideration are not clearly erroneous. Thus, we reverse on appeal and affirm on cross-appeal.

In 1963, William C. Brickey was president of Republic Casualty Insurance Company which was in financial difficulty. On September 3, 1963, Mr. Brickey borrowed $17,500 from Marshal and Lucille Purvis and $7,500 from the Purvis's daughter, Peggie Peek. As security for these loans, Mr. Brickey delivered to the Purvises and Ms. Peek shares of stock in

Republic.

On September 26, 1963, Mr. Brickey executed a promissory note to Ms. Peek for $10,000 in exchange for checks from her totaling that amount. Ms. Peek thereafter acquired the Purvis's interest in the pledged shares of stock.

In 1966, Mr. Brickey asked Ms. Peek to release the shares of stock so that he could pledge them as collateral for a loan from a Ft. Smith lender to Republic. She did so in exchange for a promissory note executed by William C. Brickey and Mariannes Brickey, who was then married to Mr. Brickey, secured by a second mortgage on the Brickeys' home.

In 1968 a foreclosure action was brought by Pulaski Federal Savings and Loan Co., holder of the first mortgage on the Brickey home. Peggie Peek was named a party, and she cross-claimed for foreclosure of the second mortgage. Apparently because Mr. Brickey paid Pulaski Federal the money owed at that time, the foreclosure suit was not pursued. Neither was it dismissed until 1978 when the court found it had not been prosecuted and dismissed it pursuant to a local rule without notice to Ms. Peek.

This court reversed the dismissal and reinstated the suit, holding that Ms. Peek was not responsible for the failure to pursue the foreclosure, and the dismissal was thus "voidable."

At trial, Mr. Brickey and his current spouse, Barbara Brickey, contended he did not receive consideration in exchange for the $35,000 note in favor of Ms. Peek. His claim was that Ms. Peek's husband, Noah Peek, Jr., who had been a member of Republic's board of directors, used the borrowed money to obtain $50,000 worth of bonds which were "put up with the [insurance] commissioner," and that Noah Peek, Jr., presumably later, took the money and used it personally. He also presented testimony and records showing that Republic had paid Ms. Peek over $40,000 which he said had been in payment for the loan.

Ms. Peek presented a purported sworn affidavit, dated December 9, 1968, bearing the signature "William C. Brickey" in which the transactions between her and Mr. Brickey were described. Noah Peek Jr., testified that the affidavit was executed by Mr. Brickey in the office of attorney Thorpe Thomas and that he saw Mr. Brickey sign it. Mr. Thomas also testified that the

affidavit was executed by Mr. Brickey in his office.

The affidavit, which was accepted as an exhibit, states clearly the circumstances under which the note and mortgage were given to Ms. Peek. It mentions nothing about payment or about lack of consideration. Mr. Brickey testified that his signature on the affidavit was a forgery and that Mr. Peek had burglarized his home and taken away records which would have shown that the obligation to Ms. Peek had been paid. Mr. Peek denied having done so. On cross-examination, Mr. Brickey was reminded that he acknowledged his signature on the affidavit in an earlier deposition.

Apparently there were numerous business transactions among the Brickeys, the Peeks, and Republic. Mr. Brickey testified about jewelry, automobiles, and horses taken from him by Noah Peek, Jr., and about a $258,000 note in favor of the Peeks which was to "cover everything." On cross-examination, however, he could not show any notation on that note or any other documentation showing satisfaction of the note and mortgage at issue here.

At the conclusion of the trial, the chancellor ruled that if the debt were not paid within 10 days, the property would be sold, subject to the interest of the first mortgagee which is now Savers Federal Savings, the successor to Pulaski Federal. The chancellor awarded a judgment on the note for $35,000 plus costs, but he declined to award the 8% interest specified in the note. The court's order recites, "the equities in these circumstances should not allow interest" on the note and mortgage.

### 1. Payment and lack of consideration

Whether there had been payment of the note or lack of consideration given for it were clearly issues of fact. We will not reverse a chancellor's factual decisions unless we are shown that they are clearly erroneous or clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a); *Milligan* v. *General Oil Co.,* 293 Ark. 401, 738 S.W.2d 404 (1987); *Jones* v. *Ragland,* 293 Ark. 320, 737 S.W.2d 641 (1987).

Arkansas R. Civ. P. 8(c) makes payment and failure of consideration affirmative defenses for pleading purposes, and,

in situations where there are complicated business transactions between the maker and payee of a note, we have held that the burden of proving payment which was or should have been credited to the maker is upon the maker of the note. *Miles* v. *Teague*, 246 Ark. 1288, 441 S.W.2d 799 (1969); *Hill* v. *Green*, 127 Ark. 406, 192 S.W. 209 (1917). Peggie Peek testified she had not been paid the $35,000 she was owed on the note, and the chancellor was under no obligation to believe evidence to the contrary.

■ With respect to failure of consideration, Mr. Brickey admitted in testimony that he received money from the Purvises and Ms. Peek in 1963 in exchange for stock in Republic and that it was at his behest that Ms. Peek, having acquired the Purvis's interest in the Republic Stock they held as security, relinquished it in exchange for the note and the second mortgage on the home Mr. Brickey owned with his then spouse. The note and the second mortgage were thus given by Mr. Brickey and his spouse in exchange for another obligation, the pledge of stock, which clearly had been made in exchange for consideration. That there was no failure of consideration from Ms. Peek seems obvious.

Because we cannot say the chancellor's findings of fact were clearly erroneous, we affirm on cross-appeal.

## 2. Interest

The chancellor cited nothing in support of his authority to deny interest on the note from the Brickeys to Ms. Peek, and we find no statute or case law which would permit him to do so. The note clearly provided for payment of 8% per annum interest on the principal sum.

■ It is true that a chancellor may deny interest if the obligation is a purely equitable one. *See Keenan* v. *Crain*, 220 Ark. 199, 246 S.W.2d 730 (1952). In this case, however, the obligation was not purely equitable but was a legal obligation based upon a promissory note.

The Brickeys cite two cases for the proposition that Ms. Peek is not entitled to interest because of the delay in pursuing her rights. In *Lyle* v. *Latourette*, 209 Ark. 721, 192 S.W.2d 521 (1946), we held that no interest was due on a debt arising from a

lien until the lien claim was filed. The Brickeys have cited the case for this language, "when interest once begins to run on a claim it continues to run pending decision by the courts, if the delay is not the fault of either party." The other case cited is *H.B. Deal & Co., Inc.* v. *Bolding*, 225 Ark. 579, 283 S.W.2d 855 (1955), in which it was held that interest would run on a claim for overtime wages because the record did not warrant a finding of fault on the part of the claimants.

Neither of these cases supports the authority of a chancellor to ignore the rate of interest specified in a promissory note because of enforcement delay attributable to the payee. The argument of the Brickeys on this point is, in part, that the chancellor had "doubts" about whether Ms. Peek ever loaned them the money. Either the note was valid or it was not. Having concluded the note was valid and enforceable, it was not within the chancellor's power to deny the interest on the ground that he had "doubts," and we doubt that he did so.

While it is not called "laches," the remainder of the Brickeys' argument on this point is that Ms. Peek delayed too long in pursuing the foreclosure action. It is argued that Mr. Brickey changed his position in detrimental reliance over the years on Ms. Peek's failure to act. Even if laches applied, we could not agree with the argument because it does not say how Mr. Brickey's position was changed. Nor can we credit other aspects of this argument, such as, that the records of Republic are no longer available, "they being turned over to the Arkansas Insurance Department many years earlier." Nothing in the record before us shows that the records, even if they might be relevant, are unavailable.

 As we explained in *Colclasure* v. *Kansas City Life Ins. Co.*, 290 Ark. 585, 720 S.W.2d 916, cert. den. 481 U.S. 1069 (1986), a foreclosure action is equitable in nature, but the chancellor may, under the clean-up doctrine, award a legal money judgment along with the foreclosure. Although the chancery court is empowered to render a judgment on the underlying debt in a foreclosure action by statute. Ark. Code Ann. § 18-49-103(c) (1987), we have recognized that the jurisdiction to render a personal judgment for debt is only incidental to the jurisdiction to foreclose. *Husband* v. *Crockett*, 195 Ark. 1031, 115 S.W.2d

882 (1938). The award of interest in this case should have been made a part of the chancellor's award of an *in personam* money judgment for $35,000 plus costs in favor of Ms. Peek, as such a judgment is a legal rather than equitable matter. "The equitable doctrine of laches is not applied in actions for damages, for accounting, for the recovery of money or property fraudulently obtained, and the like." S. Symons, Pomeroy's Equity Jurisprudence, § 917, p. 600 (5th Ed. 1941).

We affirm the chancellor's action on cross-appeal and reverse on appeal and remand for orders consistent with this opinion.