Fred DUDLEY *v.* LITTLE RIVER COUNTY,
Arkansas, et al.

90-299                                              805 S.W.2d 645

Supreme Court of Arkansas
Opinion delivered March 25, 1991

*Honey & Honey*, by *Charles L. Honey*, for appellant.

*Bishop & Bishop*; *Mickey Buchanan*; and *Dowd, Harrelson, Moore and Giles*, for appellees.

TOM GLAZE, Justice. This is an illegal exaction case brought by Fred Dudley, a taxpayer and resident of Little River County, against the former and current county judges of Little River County and the quorum court. Hoye Horne served as the county judge from 1975 to 1988, and Clyde Wright serves now. In his complaint, Dudley, appellant, made the following charges against the county judges: 1) free gravel was provided to certain citizens of Little Rock County using county owned trucks and county employees; 2) the county charged less than the fair market value for gravel it sold to individuals; 3) gravel was illegally sold on credit; and 4) free grave-digging services were provided for private funeral homes for burials of county citizens using county

employees and equipment. Appellant requested an injunction to prohibit any further illegal use of county property, labor and services. Further, the appellant asked that the county judges he held personally liable to the county for the fair market value of all property and services misappropriated plus punitive damages and attorney's fees.

The chancellor found that neither Horne nor Wright gave away county-owned gravel to private interests. But, the chancellor found that the county improperly sold gravel without following the procedures set forth in Ark. Code Ann. § 14-16-105 (1987). The chancellor prohibited County Judge Wright from making any further gravel sales without fully complying with § 14-16-105. The chancellor found there were no damages because the county judges had sold the gravel for its fair market price. In addition, the chancellor found that the county judges improperly sold gravel on credit and enjoined County Judge Wright from making any further gravel sales on credit. As to the grave-digging, the chancellor found that the quorum court knew about the grave-digging services, and thus the county judges acted in good faith and were in substantial compliance with Ark. Code Ann. § 14-14-802 (1987). Because no damages were awarded, the chancellor denied the appellant's request for attorney's fees.

The appellant appeals from these rulings, and specifically argues that the chancellor erred in failing to award damages. We partially agree, and therefore affirm in part and reverse and remand in part.

First, we affirm the chancellor's finding that the county judges did not give away free gravel to private interests. The evidence showed that the county provided gravel and did road work on all county roads, bus and mail routes. In addition, the county put in culverts to drain water off the county roads. But, the appellant alleged that the county also provided free gravel and road work to individuals for private roads and driveways. The appellant's main witness against the county on this issue was a former county employee, James Johnson. Johnson prepared a list of 86 private individuals who received gravel from the county. however, on cross-examination, Johnson admitted that some of these may have been on county roads, bus or mail routes and most

importantly, that he did not know if anyone was billed for the gravel. Further, he admitted that it was the county's practice to spread excess gravel into the adjoining drives rather than load it back into the truck. The chancellor expressly questioned the credibility of Johnson, because Johnson had been fired by the county judges twice, once for drinking and once for lying.

While Donny Waldron, a taxpayer, testified that he personally saw gravel at each of the locations indicated by Johnson, he also was unable to say whether anyone was billed for the gravel or if the locations were on county roads, mail or bus routes. Both county judges Wright and Horne denied giving gravel away free and attributed the names on the appellant's lists to being either county roads, bus routes, mail routes, excess gravel already unloaded at the site and left over from a county job, or culverts dug on private property to protect county roads from water damage.

■■ We do not set aside a chancellor's findings of fact unless they are clearly against the preponderence of the evidence. ARCP Rule 52(a). And, we give due regard to the chancellor's opportunity to judge the credibility of the witnesses. From reviewing the testimony briefly set out above, we cannot say that the chancellor's finding was clearly against the preponderance of the evidence. Even if we were to accept Johnson's list as credible, he was unable to say that the gravel was given away to individuals.

We also affirm the chancellor's finding that no damages resulted from the county judges' sales of gravel. The proper procedure for a county to follow when selling any real estate or personal property is set out in Ark. Code Ann. § 14-16-105 (Supp. 1989). Under this provision, the county judge is required to enter an order in the county court describing the commodity to be sold, giving the reason for sale, and directing the county assessor to have such commodity appraised at its fair market value. The property is not to be sold for less than three-fourths of the appraised value. While the chancellor found that the county judges sold gravel without complying with § 14-16-105, he awarded no damages. Instead, he enjoined County Judge Wright from making any further gravel sales without complying with the statute.

To support his claim for damages, the appellant introduced

evidence from Bobby Smith. Smith is in the sand and gravel business in Howard County. He testified that the price of gravel was based on the cost of gravel at the pit. Based on this figure, Smith testified that the fair market value of gravel was $1.50 a yard loaded and $6.00 a yard delivered. While Smith testified that gravel cost 35¢ a yard in Howard County, he did not know the price of gravel at the pit in Little River County. Further, Smith admitted that the gravel he sold in Howard County was a better quality than a red clay gravel used by Little River County. Former County Judge Horne testified that until 1987, the county paid 20¢-25¢ a yard for gravel, and thereafter Weyerhaeuser gave gravel to the county free of charge. Horne testified the cost of a yard of gravel loaded was 50¢ and, the cost of a yard of gravel delivered was $2.00. The county charged 50¢ per yard for gravel loaded onto individual trucks and $2.00 per yard if delivered by the county to the individual.

■ The chancellor found that the county neither lost nor made money from the gravel sales. Again, we believe the appellant's proof falls short of showing that the chancellor's finding is clearly erroneous. The appellant failed to put on evidence to prove that the fair market value for Little River County gravel was more than 50¢ per yard loaded and $2.00 per yard delivered.

Next, we address appellant's argument that the chancellor erred in failing to award damages for the illegal extension of credit by the county judges. A county cannot lend its credit for any purpose. Ark. Const. art. 16, § 1. The 1987 audit of Little River County revealed that the county sold gravel on credit. The Legislative Audit Administrator testified that as of August 16, 1988, there was a balance due the county of $2,930.50 from the gravel sales on credit. The audit report recommended that the prosecuting attorney in connection with the county judge collect all unpaid amounts due. County Judge Horne sent out letters on August 2, 1988, requesting payment from individuals who had received gravel. Horne testified that every effort had been made to collect the outstanding debt and that a list of people and the amount owed had been turned over to the prosecuting attorney. He stated that he did not know if any lawsuits had been filed.

■■ We disagree with the chancellor that the taxpayers

are not entitled to damages on this issue. Here, the above evidence shows that the county judges improperly extended credit and because of this extension of credit, the county government has uncollected money due on past sales. While we believe that the taxpayers are entitled to recover the amount of money still owed to the county by the extension of credit, we conclude that the record is unclear as to the amount still left outstanding. For example, the prosecuting attorney may have collected some of this amount. Because the record is unclear as to the amount of money still unpaid, if any, we remand the case back to the chancellor for a hearing to determine the amount. *See Hall* v. *Staha*, 303 Ark. 673, 800 S.W.2d 396 (1990).

Further, we disagree with the chancellor's finding that the Little River County Quorum Court knew of the county's free grave-digging services, and therefore the county judges were in substantial compliance with Ark. Code Ann. § 14-14-802 (1987). Under this statutory provisions, a county government, acting through a quorum court, may provide through an ordinance for the establishment of any service or performance of any function not expressly prohibited by the Arkansas Constitution or by law. One of the services listed in cemetery, burial and memorial services. Ark. Code Ann. § 14-14-802(b)(2)(C)(ii).

██ It is undisputed that no ordinance existed authorizing the county judges to provide grave-digging services. The parties stipulated that 684 graves were dug between 1983 and 1988. County Judge Horne testified that the quorum court was aware of and approved of the grave-digging services. Besides Horne's testimony, we see no indication from the record that the quorum court knew of the grave-digging services. Nonetheless, if the quorum court had known of the grave-digging services, it took no action by ordinance or otherwise to authorize such services; therefore the providing of these services was invalid under § 14-14-802. Appellant offered testimony by a funeral home employee to establish the cost of digging a grave at $80.00 to $105.00. County Judge Horne testified that it cost the county only $8.00 to dig a grave. We usually decide chancery cases *de novo*. However, because we already must remand the case regarding the damages, if any, for the unlawful extension of credit issue involving the sales of gravel, we direct the chancellor to determine at the same time the proper amount of damages to be awarded the

taxpayers for the grave-digging services.

Finally, we briefly address two additional arguments that will recur on remand. First, the parties presented the question to the chancellor below as to whether the five-year or three-year statute of limitations applies, but because no damages were awarded, the chancellor did not rule on the issue. Because damages will be awarded on remand, we must address that issue.

█ The parties apparently agree that the three-year statute of limitations should apply unless there has been intentional fraud, corruption, or willful diversion in the payment of money — then the five-year statute of limitations applies. *See Munson* v. *Abott*, 269 Ark. 441, 602 S.W.2d 649 (1980). From the record before us, the appellant has not shown intentional fraud, corruption or willful diversion in the providing of these services. We believe the record clearly shows that the judges thought they were providing a needed service to the community. Apparently, the practice of providing such services was widely known in the county, and while appellees could have lawfully performed these services by complying with § 14-14-802, they failed to do so. Although appellees' actions failed to meet the dictatees of § 14-14-802, such failure falls short of showing they acted fraudulently in providing the grave-digging services. Accordingly, the chancellor should apply the three-year statue of limitations when deciding damages on remand.

█ Second, the parties' briefs touch on the lower court's failure to award attorney's fees to the appellant, but they seem to agree that issue became moot when the chancellor awarded no damages. *See City of Hot Springs* v. *Creviston*, 288 Ark. 286, 705 S.W.2d 415 (1986). Since damages will now be awarded, the chancellor can consider appellant's request for attorney's fees.

For the reasons stated above, we affirm in part and reverse and remand in part.