Robert David KARNES and Vanetta Karnes, United States of America, Acting through Farmers Home Administration, Anna Karen Karnes Garner, Robert David Karnes, as Executor of the Estate of W.T. Karnes, Deceased, and J.B. Karnes as Special Personal Representative of the Estate of W.T. Karnes, Deceased *v.* Wanda Janice Karnes MARROW, Laura Nell Karnes Morris, Floy Ellen Karnes Hess and Margaret Sue Karnes Slocum

93-331                                              864 S.W.2d 848

Supreme Court of Arkansas
Opinion delivered November 8, 1993

---

38

*Daggett, Van Dover & Donovan*, by: *Robert J. Donovan*, for appellant.

*Lohnes T. Tiner*, for appellee.

Tom Glaze, Justice. This appeal is from a foreclosure action on some acreage (110 acres) located on the Karnes farm, which in its entirety, is approximately 300 acres in Cross County. The Karnes farm had an A.S.C. number (H418) for purposes of government programs and payments. In January 1982, the Karnes farm was owned by W.T. Karnes. On February 4, 1982, W.T. conveyed forty acres of the farm as an inter vivos gift to his son, appellant Robert Karnes, and three grandchildren as tenants in common. On March 15, 1982, W.T. sold 110 acres to Robert for $82,500 with an interest rate of six percent per annum and payable in twenty annual installments of $7192.73 each, beginning March 15, 1983. The debt was evidenced by a promissory note and secured by a mortgage executed by Robert and Venetta Karnes.

On the same day that the 110 acres were sold to Robert, W.T. executed his will leaving Robert's promissory note to the appellees, W.T.'s daughters. Prior to and during this time, W.T., Robert, and J.B., another son, farmed the entire acreage.

On December 22, 1990, W.T. died and his 1982 will was admitted to probate. On March 13, 1991, the appellees foreclosed on the 110 acres, alleging Robert had not made any of the annual payments. Robert and the other appellants pled the affirmative defenses of payment, accord and satisfaction, waiver, estoppel, and the statute of limitations.

At trial, Robert claimed that he had agreed to give W.T. the annual income from his two tracts, (the forty and 110 acres), in satisfaction for the annual payment on his promissory note, and that this method of payment continued until W.T.'s death. While Robert admitted he made no direct payments to W.T. and could not produce canceled checks or receipts, he produced records of grain receipts and government payments made on the farm in an effort to determine the total income produced during the years in dispute. From this evidence, Robert requested he be given credit for that portion of the income and government payments that could be attributed to his acreage. Further, he argued that any payments due over five years prior to the suit were barred by the statute of limitations. On counterclaim, Robert asked the court to give him credit on the note for the rental value of the land,

contending that W.T. was a "mortgagee in possession" whose estate had the burden of accounting for rents received.

The chancellor dismissed the counterclaim and held that Robert had the burden of proof which he failed to satisfy. However, the court found an agreement between Robert and W.T. existed which was sufficient to toll the statute of limitations, but any attempt at reducing the agreement to a dollar value would require speculation by the court. Following trial, the property was sold at foreclosure sale and was purchased by the appellees for $70,000, with a deficiency judgment awarded against Robert and Vanetta Karnes. This appeal followed the order of foreclosure and deficiency judgment.

First, the appellants claim that the chancellor erred by ignoring the plain language of the mortgage held by W.T. The mortgage in part provides as follows:

> In case of nonpayment or failure to perform the agreements herein contained, the said GRANTEE, GRANTEE'S, heirs and assigns shall have the right and power to take possession of the property herein conveyed and expel any occupant therefrom without process of law; to collect rents and profits and apply same on unpaid indebtedness[.]

Appellants argue that this language obligated W.T. as mortgagee in possession to apply rents and profits from the 110 acres to Robert's debt. In support, they cite a number of Arkansas cases wherein this court applied the general rule that a mortgagee in possession of mortgaged land is liable for all rents and profits collected or rents that could be collected by ordinary diligence. Additionally, the mortgagee in possession must apply those amounts for which he is liable to the debt on the mortgage. *Denham* v. *Lack*, 200 Ark. 455, 139 S.W.2d 243 (1940); *Robertson* v. *Read*, 52 Ark. 381 (1889). Thus, the appellants claim since W.T. was a mortgagee in possession and was liable for application of the rents and profits to Robert's debt, the chancellor erred when he found the burden of proof was on the appellants. *See* 55 Am. Jur.2d Mortgages § 224 (1971).

The threshold question is whether W.T. was a mortgagee in possession. If W.T. was a mortgagee in possession, appellees had the burden to account for the rents and profits received from the

mortgaged land. If W.T. was not a mortgagee in possession, the appellants bore the burden to prove payments were made.

*Black's Law Dictionary* 912 (5th ed. 1979) defines mortgagee in possession as follows:

> A mortgagee of real property who is in possession of it with the agreement or assent of the mortgagor, express or implied, and in recognition of his mortgage and because of it, and under such circumstances as to make the satisfaction of his lien an equitable prerequisite to his being dispossessed.

*See also* 55 Am. Jur. 2d Mortgages § 193. Accordingly, in order for W.T. to have been found a mortgagee in possession and thus liable for the rents and profits, he must have possessed the mortgaged land (1) because of his status as mortgagee, (2) with the express or implied consent of the mortgagor, and (3) to the exclusion of the mortgagor. *See also Armistead* v. *Bishop*, 110 Ark. 172 (1913). Here, W.T. owned more acreage than the 110 acres under the mortgage, and the appellants failed to prove that W.T. had possession as mortgagee of the mortgaged acres to the exclusion of Robert.

In fact the evidence showed that Robert had actual or constructive possession of the mortgaged land during part of the time at issue. In 1982, W.T., J.B., and Robert, as partners, farmed the entire farm with each receiving one-third of the gross. By his own admission, Robert testified that he farmed the mortgaged land in 1984, 1985, and 1986, and that in 1987, he harvested the same land. In 1988, J.B. Karnes, Betty Karnes, and Archie Stephens (a tenant) farmed the Karnes lands, except for a few acres which W.T. farmed. In 1989 and 1990, J.B. and Betty Karnes and Lynn Murphy, as tenants, farmed the Karnes lands. In 1991, J.B. farmed the Karnes lands.

The appellants point to the government payments made to W.T. as operator of ASC and argue that this is evidence that W.T. was a mortgagee in possession. However, this evidence alone does not prove that W.T. was a mortgagee in possession. As follows, this court has held:

It is, however, essential, before there is an accountability as mortgagee in possession, that the possession must be taken under and by reason of the mortgage, or under such circumstances as would justify a court in treating the possession as being under the mortgage.

*Armistead* v, *Bishop*, 110 Ark. 172, 174 (1913) (cite omitted). *In accord Pine Bluff Production Credit Assoc.* v. *Lloyd*, 252 Ark. 682, 480 S.W.2d 578 (1972) (no evidence that the mortgagee was ever in possession). Since the appellants failed to prove W.T. was a mortgagee in possession, the burden of proof remained on the appellants to show payments were made on the note.

Second, the appellants claim that an agreement between Robert and W.T. had modified the promissory note so that W.T. was to apply Robert's share of the annual crop rental in satisfaction for the annual payment on the note.[1] The chancellor determined that some agreement was reached, but that he was unable to determine exactly what that agreement was and that any application of a dollar amount or assignment of any rental value to the agreement would be speculative at best.

The chancellor took particular note of the fact that in 1988, Robert stated under oath in answer to interrogatories that he owed his father $82;500, which was the same amount Robert owed W.T. in 1982. Further, the chancellor found that, during the years in question, the tax records of both Robert and W.T. failed to provide evidence that payments had been made and interest income had been earned.

Payment is an affirmative defense and the burden of proof is on the party asserting it. *Miles* v. *Teague*, 246 Ark. 1288, 441 S.W.2d 799 (1969); *Pulpwood Suppliers, Inc.* v. *First National Bank in Stuttgart*, 21 Ark. App. 147, 729 S.W.2d 425 (1987). Further, it is for the chancellor to judge the credibility of the witnesses and the appellate court will not reverse a chancellor's finding of fact unless clearly against a preponderance of the evidence. *Dudley* v. *Little River County*, 305 Ark. 102, 805 S.W.2d 645 (1991); *Riddick* v. *Street*, 313 Ark. 706, 858 S.W.2d

---

[1]The appellees did not argue the Statute of Frauds for any modification or novation of the promissory note.

62 (1993). A review of the record indicates that the chancellor was not clearly erroneous in finding that the appellants failed to prove that payment was made by Robert either under the original promissory note or under some other agreement.

Turning to appellants' next argument, they cite Ark. Code Ann. § 18-49-101(a) (1987) which provides that suits to foreclose mortgages may be barred if they have not been brought within the period of limitation for a suit on the debt. Section 16-56-111(a) (Supp. 1993) further provides that actions on promissory notes not under seal "shall be commenced within five years after the cause of action shall accrue, and not thereafter." That statute also provides that partial payment shall toll the limitations period. *In accord Billingsley* v. *Pruitt*, 226 Ark. 577, 291 S.W.2d 498 (1956). When the debt is payable in installments, the statute of limitations runs against each installment from the time it becomes due. *Bank of New York* v. *University Partners, Ltd.*, 719 F. Supp. 1479 (W.D. Ark. 1989) [citing *Linke* v. *Kirk*, 204 Ark. 393, 162 S.W.2d 39 (1942)].

Here, the appellants point out that Robert's promissory note was signed on March 15, 1982, with the first payment due on March 15, 1983, and the foreclosure suit was not filed until March 13, 1991. Thus, under the five-year statute of limitations, appellants assert that the appellees are barred by law from recovering those payments that became due prior to March 13, 1986. This being true, appellants argue the payments due in the years 1983, 1984, and 1985, for a total amount of $21,578.19, are barred. We agree.

In holding the statute of limitations did not bar any of the payments due under Robert's note, the chancellor found that "some type of an agreement was reached between W.T. and Robert and that agreement was sufficient to toll the statute." In the same context, the chancellor also said that to reduce the agreement to a dollar amount would be engaging in sheer speculation, and significantly we think, he failed to mention any evidence on which he relied to find an agreement existed between W.T. and Robert. In fact, the judge, as discussed above, very clearly determined that no payments were given W.T. by Robert or the other appellants. The judge was clearly wrong in concluding the statute

of limitations was tolled in those circumstances. Therefore, we reverse and remand on this point.

Finally, the appellants claim the promissory note between W.T. and Robert does not control the debt owned on the 110 acres, but instead W.T.'s will controls. Under this argument, the appellants aver a final disposition must be made under the terms of the will, according to the intent of the testator, and that it is clear from the terms of the will that W.T. intended for the appellees to take less than the face amount of the note.

Article VI of the will provides as follows:

> To my daughters Wanda Janice Karnes Marrow, Laura Nell Karnes Morris, Floy Ellen Karnes Hess and Margaret Sue Karnes Slocum, I give and devise in equal shares a certain Promissory Note secured by a mortgage and from Robert David Karnes to myself in the original principal amount of $82,500 and payable in twenty (20) equal annual installments including interest at the rate of 6% per annum.

It is clear from this language that W.T. bequeathed the note to his daughters without limitation. Thus, the daughters received all rights and obligations under the note that were held by the testator. In addition, the daughters can receive no more than what W.T. would be entitled to receive if alive.

In conclusion, because the appellants did not satisfy their burden of proof by presenting evidence that payments were made in satisfaction of the promissory note or a modifying agreement, the appellees as legatees of the note had a right to foreclosure. However, since no payments or partial payments were found to toll the statute of limitations, the payments due in the years 1983, 1984, and 1985 are barred and the judgment amount must be reduced accordingly.

Affirmed in part, reversed and remanded in part.

NEWBERN, J., not participating. BROWN, J., concurring in part; dissenting in part.

ROBERT L. BROWN, Justice. I would affirm the chancellor's decision across the board.

The majority second guesses the chancellor's finding of fact that a separate agreement to apply farm income to note payments was entered into between W.T. Karnes and his son, appellant Robert Karnes, and that payments were made under that agreement. According to the chancellor, the separate agreement and the rent payments tolled the statute of limitations for the years 1983, 1984, and 1985. The specific language in his letter opinion is this:

> Although the decedent's tax returns indicate he received gross rents, it must be remembered that he owned other lands on which rents were received. If the Court were to attempt to account for the rents and profits, it would be engaging in speculation and that is something this Court cannot do. The Defendants have the burden of proof on this issue and the documentary proof does not satisfy that burden.

> *STATUTE OF LIMITATIONS:*

> As stated, the Court is unable to resolve the issue of the amount of the rents and profits. It finds, however, that there is proof that some payments were made and that this action is not barred by limitation.

> The counterclaim is dismissed.

> . . . .

> This case has been presented as well as it could have been presented. What the Court is trying to say is that some type of an agreement was reached between the decedent and his son Robert Karnes. Whatever that agreement was, it was sufficient to toll the statute of limitations. If the Court were to try to reduce the agreement to a dollar amount or assign an obligation to account on a fair rental value, it would be engaging in sheer speculation.

The chancellor found that there was a second agreement between father and son relating to the application of farm income to the debt. He found that payments were actually made pursuant to that agreement. However, the amount of those payments, he concluded, was impossible to quantify, and the appellants did not satisfy their burden of proof in this regard. Nevertheless, the

fact of the agreement and the payments of an undetermined amount tolled the statute of limitations in his judgment.

The chancellor's findings appear entirely reasonable to me. We should be reluctant in this case to substitute our factual findings for those of the chancellor who had the benefit of hearing the testimony and argument on a difficult issue. I would not reverse on this point.