Cite as 2021 Ark. 179
# SUPREME COURT OF ARKANSAS
No. CV–21–163

|  |  |
|---|---|
| DAN LARRY PENNINGTON; NORMA J. BRYANT; AARON PARISH BLACK, AS TRUSTEE OF THE RALPH J. AND REBA J. FAMILY TRUST; AND AARON PARISH BLACK, AS TRUSTEE OF THE REBA J. PARISH TRUST, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED INDIVIDUALS<br><br>       PETITIONERS/PLAINTIFFS<br><br>V.<br><br>BHP BILLITON PETROLEUM (FAYETTEVILLE), LLC; AND MMGJ ARKANSAS UPSTREAM, LLC<br>     RESPONDENTS/DEFENDANTS | **Opinion Delivered:** October 14, 2021<br><br>A CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS<br><br>HONORABLE LEE P. RUDOFSKY, UNITED STATES DISTRICT COURT JUDGE<br><br><u>CERTIFIED QUESTION ANSWERED</u>. |

**RHONDA K. WOOD, Associate Justice**

The five-year statute of limitations for breach of contract starts when a plaintiff can first bring the cause of action to a successful conclusion. Here, the contract required monthly oil-and-gas royalty payments. Plaintiffs alleged defendants had been underpaying those royalties for more than five years. We accepted a certified question from federal court whether Arkansas law prevents plaintiffs from pursuing their breach-of-contract claim when the first breach occurred outside the statute-of-limitations period. We conclude a separate statute-of-limitations period began as each monthly royalty payment became due.

I. *Factual Background*

This case arose when oil-and-gas royalty holders, plaintiffs, sued their lessees, defendants, in federal district court. Their primary cause of action was breach of contract. Under the contract, defendants would extract natural gas from wells, prepare it for shipment, and transport it for sale at an interstate pipeline. Once the natural gas arrived at the pipeline, the gross proceeds were calculated based on the weighted average sales price, or WASP. Then, either defendants or their agents would pay plaintiffs a monthly royalty based on the gross proceeds.

According to the complaint, defendants improperly deducted certain costs from the WASP for "midstream services." Examples of these services are gathering, treating, and transporting the natural gas from the wells to the pipelines. This deduction led to a lower monthly gross-proceeds total and lower royalty payments. Plaintiffs alleged this post-production cost deduction breached defendants' contractual obligations. In response, defendants raised the affirmative defense of statute of limitations.

Following the affirmative defense, the federal court faced an unsettled question of law. The parties agreed the five-year statute of limitations for written contracts applied. Ark. Code Ann. § 16-56-111(a) (Repl. 2005). Still, they disagreed over interpreting Arkansas law to their contract. Defendants argued any alleged breach began when the first underpayment occurred, which was more than five years before plaintiffs filed their complaint. Plaintiffs countered that every monthly underpayment was a separate breach, and they could pursue any breaches within five years of their action.

The federal district court then found no Arkansas case definitively settled the issue. Out of deference to our state supreme court, it certified the following question of law:

> In the oil and gas leases at issues in this case, does the five-year statute of limitations set forth in Arkansas Code section 16-56-111(a) bar Plaintiffs from bringing a breach of contract lawsuit for alleged underpayments of monthly royalties that occurred within the statute of limitations period because similar underpayments of monthly royalties took place outside of the limitations period?

We accepted certification and answer the question in the negative.

## II. *Law and Analysis*

We agree with the parties that the relevant statute of limitations for written instruments is five years: "Actions to enforce written obligations, duties, or rights . . . shall be commenced within five (5) years after the cause of action shall accrue." Ark. Code Ann. § 16-56-111(a). And a cause of action for breach of contract accrues "when the plaintiff could have first maintained the action to a successful conclusion." *Dupree v. Twin City Bank*, 300 Ark. 188, 191, 777 S.W.2d 856, 858 (1989). Said another way, "[a] cause of action accrues the moment the right to commence an action comes into existence, and the statute of limitations commences to run from that time." *Ray & Sons Masonry Contractors, Inc. v. U.S. Fid. & Guar. Co.*, 353 Ark. 201, 216, 114 S.W.3d 189, 198 (2003).

The issue before us is, when did plaintiffs' cause of action begin on any alleged breach of monthly royalty payments? Typically, for contracts that require installment payments like promissory notes, we have held that a discrete cause of action arises from each underpayment. *See Linke v. Kirk*, 204 Ark. 393, 162 S.W.2d 39 (1942); *Karnes v. Marrow*, 315 Ark. 37, 864 S.W.2d 848 (1993). In *Linke*, the borrowers promised to repay a $300 promissory note in six annual installments of $50; the first installment was due in October

1930, and the last was due in October 1935. 204 Ark. at 394, 162 S.W.2d at 40. Borrowers never made payments, but creditors did not sue until October 1940. *Id*. In this instance, we held that the five-year statute of limitations did not bar recovery for the final installment from 1935 because "[w]here a note or a bill is made payable by installments, the statute attaches to and begins to run upon each installment as it become due." *Id*. at 395, 162 S.W.2d at 40–41. We applied this rule in *Karnes*, holding that a deficiency judgment following foreclosure could not include any underpayments exceeding five years from when the lawsuit was filed. 315 Ark. at 44, 864 S.W.2d at 851. Both cases hold that the statute of limitations begins each time a borrower fails to meet a monthly obligation under a promissory note; assuming the five-year limitations period has not expired from that date, the creditor can recover.

This certified question is different because the parties are not in a debtor-creditor relationship. And no Arkansas case has directly addressed whether the above principle applies to underpayments of monthly oil-and-gas royalties. Defendants alleged the breach accrued outside the limitations period because their conduct amounted to a failure to perform. This alleged breach violated a single obligation to properly calculate royalty payments. Any failure in that regard started more than five years before plaintiffs filed their complaint, and thus the limitations period had expired. Defendants cite two court of appeals cases as support. But we decline to apply these cases to the current facts as neither case involved the monthly payment obligations like those at issue here. *See Beckworth v. Diamante, Priv. Membership Golf Club*, 2010 Ark. App. 814, 379 S.W.3d 752 (involving lawsuit against property developer

4

over sale of lots to third parties); *Phillips v. Union Pac. R.R. Co.*, 89 Ark. App. 223, 201 S.W.3d 439 (2005) (involving lawsuit between employee and employer).

Instead, the royalty payments here are more like monthly installment payments in a debtor-creditor relationship. Each monthly underpayment constituted a separate cause of action for breach of contract. This view tracks our authority from *Linke* and *Karnes*.

Other jurisdictions reached similar conclusions on this issue. For example, the Sixth Circuit addressed an issue where plaintiffs alleged defendants underpaid gas royalties for more than ten years. *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 462 (6th Cir. 2013). Applying Ohio law, the court held each monthly underpayment created a separate cause of action. *Id.* at 470. The court reasoned that each underpayment caused a separate wrong that, on its own, satisfied all the elements of a breach-of-contract claim. *Id.* at 469.

In addition, Texas and California courts reached the same conclusion about monthly oil-and-gas royalty underpayments. The Texas court noted that "if the terms of an agreement call for periodic payments during the course of the contract, a cause of action for such payments may arise at the end of each period, before the contract is completed." *Lyle v. Jane Guinn Revocable Tr.*, 365 S.W.3d 341, 355 (Tex. Ct. App. 2010). The California court held that a monthly underpayment constituted breach of contract and cause of action accrued once the lessee "made the incorrect payment or delivery for that month." *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 (Cal. Ct. App. 2004).

Here, the contracts required defendants to make a monthly royalty payment to plaintiffs. The provisions required defendants to remit payment based on gross proceeds, a

5

monthly calculation. Plaintiffs alleged defendants allowed improper deduction of costs. This alleged breach happened during the monthly calculation and payment remittance. The damages element of breach of contract would have been established monthly and, potentially, in a different amount each month. We find these are separate and singular breaches under Arkansas law. Thus, plaintiffs would have a separate claim for each month that an underpayment occurred. And the clock would begin to run, for statute-of-limitations purposes, each time defendants made an underpayment. The existence of monthly underpayments of royalties outside the limitations period does not bar recovery for underpayments within the limitations period under Arkansas law.

Certified question answered.

*Barton and Burrows, LLC*, by: *George A. Barton*; and *Davidson Law Firm*, by: *Stephen L. Gershner*, for appellants.

*Quattlebaum, Grooms & Tull PLLC*, by: *Michael B. Heister* and *R. Ryan Younger*, for appellees.