The Honorable Chaney Taylor, Jr. State Representative P.O. Box 2721 Batesville, Arkansas 72503-2721
Dear Representative Taylor:
I am writing in response to your request for my opinion on the following questions:
 1. Can (legally) a County Judge give county gravel to a private church for the improvement and repair of that church[']s parking lot and use county equipment and county labor to deliver and spread that gravel?
 2. Is giving county gravel, which has value, to a private church a violation of A.C.A. § 14-16-105?
 3. Can (legally) a County Judge use a county vehicle for personal use or for personal gain? Example — can he drive a county vehicle to and from home to work, to church, for personal shopping, to the sale barn to sell personal livestock, etc.?
 4. Is a County Judge who takes gravel from a county quarry and [g]ives it to a private party/entity committing theft by embezzelment [sic]?
 5. Can (legally) a Quorum Court or a County Judge authorize the use of county labor to spray water with a county water truck to keep the dust down on private property at a private for[-]profit function?
RESPONSE
In my opinion, the answer to your first two questions is "no." The answer to your third question will depend on the circumstances. Although the Supreme Court has not found occasion to address this question directly, I believe personal use of a county vehicle might be permissible so long as it is incidental to a public purpose. In my opinion, the answer to your fourth question will depend on the facts. With respect to your fifth question, I believe the spraying you describe will be permissible only if it serves a public purpose such as protecting the general public from dust.
Question 1: Can (legally) a County Judge give county gravel to a privatechurch for the improvement and repair of that church[`]s parking lot anduse county equipment and county labor to deliver and spread that gravel?
My immediate predecessor answered this question in the negative in the attached Ark. Op. Att'y Gen. No. 98-163, which likewise addressed whether a county judge could provide a private entity free gravel, as well as access to county equipment and employees. My predecessor summarized the law as follows:
 It is generally held that county labor and equipment cannot be used to make improvements to private property. See Pogue v. Cooper, 284 Ark. 105, 679 S.W.2d 207 (1984); Cunningham v. Stockton, 235 Ark. 345, 359 S.W.2d 808 (1962); Needham v. Garner, 233 Ark. 1006, 350 S.W.2d 194
(1961); see also Ops. Att'y Gen. 97-248, 95-215, and 94-138 [copies enclosed]. I have opined that this prohibition has been applied notwithstanding the fact that the county received compensation for the work performed. See Ops. Att'y Gen. 97-248, 95-215, and 94-138. In holding that contracting with private concerns for work on private property was not allowed, the court reasoned in Needham, supra, as cited in Pogue, 284 Ark. at 106, that illegal exactions (Ark. Const. art. 16, § 13) were likely to occur because such use of county property could result in the need for more tax money to repair and replace the equipment, even if the contract produced a profit. 233 Ark. at 1010. In Opinion 94-138, I opined that as a general matter, the use of county employees and county equipment to lay asphalt on a church parking lot would be unlawful.
The opinion went on to note that such private use of public property offended Ark. Const. art. XII, § 5, which provides in pertinent part: "No county . . . shall . . . obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual." An earlier opinion, Ark. Op. Att'y Gen. No. 88-052 (attached), reached the same conclusion with respect to a county's providing a private company free gravel to construct a temporary parking lot. In this instance, I believe both arts. XII, § 5 and XVI, § 13 prohibit the practices described in your question.
Moreover, in my opinion, in addition to the problems addressed in Ark. Op. Att'y Gen. No. 98-163, the situation you describe involves an impermissible entanglement of church and state in violation of U.S. Const. amend. I, which prohibits any government action "respecting an establishment of religion," and Ark. Const. art. II, § 24, which provides that "no preference shall ever be given, by law, to any religious establishment, denomination or mode of worship above any other."
Question 2: Is giving gravel, which has value, to a private church aviolation of A.C.A. § 14-16-105?
In my opinion, probably not. I use the qualifier "probably" because the statute is slightly confusing regarding its scope. Subsection14-16-105(a) provides:
 The county court of each county shall have power and jurisdiction to sell and cause to be conveyed any real estate or personal property belonging to the county and to appropriate the proceeds of the sale for the use of the county by proceeding in the manner set forth in this section.
(Emphasis added.) This passage suggests that the statute is limited in its scope to conveyances of public property for consideration, setting forth the procedures to be observed in such sales. In accordance with this reading, both the Supreme Court and I have concluded that this statute applies to a county judge's sale of gravel to private individuals. Dudley v. Little River County, 305 Ark. 102, 805 S.W.2d 645
(1991); Ark. Op. Att'y Gen. No. 99-012 (attached).
However, A.C.A. § 14-16-105(f)(1)(A) provides in pertinent part that "[a]ny sale or conveyance of real or personal property belonging to any county not made pursuant to the terms of this section shall be null and void." (Emphasis added.) The disjunctive in the highlighted term suggests that this statute might apply to any conveyance, regardless of whether it is for consideration. Nevertheless, I believe this interpretation of the statute is unwarranted. Read in its entirety, A.C.A. § 14-16-105 seems clearly designed only to ensure that county property will be sold in a commercially reasonable fashion that will realize at least ¾ of its appraised value. See A.C.A. § 14-16-105(e)(1)(B). Accordingly, both the Supreme Court and my predecessor have concluded that the statute does not apply to transactions other than a sale. Dumas v. Jerry, Judge,257 Ark. 1031, 521 S.W.2d 539 (1975) (excluding from scope of predecessor statute, A.S.A. § 17-304 et seq., lease, with option to purchase, of property deeded to Union County); Ark. Op. Att'y Gen. No. 94-264 (deeming the statute inapplicable to the lease of a county hospital). Significantly, my predecessors did not even mention this statute in Ark. Ops. Att'y Gen. Nos. 88-052 and 98-163, which opined that giving county gravel and labor to a private entity was constitutionally impermissible.
I am enclosing for your information Ark. Op. Att'y Gen. No. 99-408, in which I reviewed at some length the circumstances under which a county or city might donate its assets to another entity without offending Ark. Const. art. XII, § 5.[1] I will not review my analysis here beyond noting that the Supreme Court has long since held that a unit of local government cannot contribute to a private, nonprofit corporation (which I assume the church to be), regardless of how exalted the corporation's purpose. Halbert v. Helena-West Helena Industrial Development Corp.,226 Ark 620, 625, 291 S.W.2d 802 (1956).
Question 3: Can (legally) a County Judge use a county vehicle forpersonal use or for personal gain? Example — can he drive a county vehicleto and from home to work, to church, for personal shopping, to the salebarn to sell personal livestock, etc.?
Although the Arkansas Supreme Court has never directly addressed this issue, I believe the personal use of a county vehicle is permissible only when it is incidental to a use that fulfills a public purpose. See,e.g., League of Women Voters of California v. Countywide Criminal JusticeCoordination Committee, 203 Cal. App. 3d 529, 554 (1988) ("So long as a public interest is served, there is no unlawful expenditure of public funds even though there may be incidental benefits to private persons."). Determining whether a particular use fulfills a public purpose and whether any personal benefit is incidental will involve a factual inquiry in each case. This office is neither equipped nor authorized to undertake any such inquiry.
To illustrate, in League of Women Voters, the California Court of Appeal held that because the district attorney and sheriff were on 24-hour duty and needed to maintain contact with their offices, they could use their official vehicles at any time, regardless of "the nature of the activity" involved. Id. at 556. This holding amounts to a categorical conclusion that the public interest in maintaining access to these officials by car radio will always render their personal use of official vehicles "incidental." Although I consider this conclusion extreme, I do agree that an incidental personal benefit will not automatically render the use of a vehicle impermissible. Obviously, I cannot formally opine that it would serve a public purpose to allow a county judge totally unrestricted use of a county vehicle; indeed, common sense suggests the contrary.[2]
However, a finder of fact might well conclude that it serves the public interest to allow a county judge to drive a county vehicle to and from work. See, e.g., Ethics Commission v. Keating, 958 P.2d 1250, 1258
(Okla. 1998) ("[G]overnment transportation to a destination (private residence) for a private purpose (to go home at the end of the work-day) does in fact fulfill a public purpose, because the employee responds to emergencies from the residence."); see also Brown v. Longiotti,420 So.2d 71, 72 (Ala. 1982) ("[T]he trend among modern courts is to give the term `public purpose' a broad, expansive definition.").
Various constitutional provisions potentially bear on your request. If the funds used to purchase the car came from tax revenues raised for the express purpose of financing official county transportation, and further if any personal benefit could not be characterized as "incidental" to a public purpose, I believe using the vehicle for an unofficial purpose would violate Ark. Const. art. XVI, § 11, which provides:
 No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose.
Alternatively, if the quorum court appropriated general funds from the treasury for the express purpose of financing official county transportation,[3] allowing use of the vehicle for exclusively personal business would violate Ark. Const. art. XVI, § 12, which dictates that "[n]o money shall be paid out of the treasury until the same shall have been appropriated by law, and then only in accordance with saidappropriation" (emphasis added). See attached Ark. Op. Att'y Gen. No.2000-126 (issued simultaneously herewith, opining that revenues appropriated into road and bridge fund could not be used to purchase a vehicle used for other purposes). Finally, if the quorum court expressly authorized the county judge to use a county vehicle for private purposes, and further if such use could not be characterized as "incidental" to a public purpose, I believe the use would violate the constitutional provision that no county may "appropriate money for, or loan its credit to, any . . . individual." Ark. Const. art. 12, § 5.
Question 4: Is a County Judge who takes gravel from a county quarry andgives it to a private party-entity committing theft by embezzelment[sic]?
I am unable to answer this question without conducting a factual inquiry of the sort I am neither equipped nor authorized to undertake. I will merely note that the formerly distinct statutory offense of embezzlement has been consolidated into the crime of theft under the Criminal Code. A.C.A. § 5-36-102; see Sitz v. State, 23 Ark. App. 126, 743 S.W.2d 18
(1988); State v. Reeves, 264 Ark. 622, 574 S.W.2d 647 (1978). The elements of theft of property are set forth at A.C.A. § 5-36-103:
(a) A person commits theft of property if he:
 (1) Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner thereof; or
 (2) Knowingly obtains the property of another person, by deception or by threat, with the purpose of depriving the owner thereof.
Only a finder of fact can determine whether these conditions have been met in any particular case. Moreover, without impermissibly weighing the facts, I am unable to opine regarding the criminal classification into which any possible theft might fall, see A.C.A. § 5-36-103 — a determination that may control whether any potential charge is even available in light of the applicable statute of limitations, see A.C.A. § 5-1-109.
I should note that in at least one jurisdiction the misappropriation of public property has been deemed to amount to embezzlement. People v.Redondo, 24 Cal. Rptr. 2d 143 (Cal App. 1993) (deputy sheriff's use of police vehicle to steal lawn mower amounted to embezzlement), citingPeople v. Harby, 125 P.2d 874 (Cal.App. 1942) (councilperson's use of city-owned vehicle to take 4,000-mile pleasure trip amounted to embezzlement). However, the challenged conduct in these cases was particularly egregious. As reflected in my response to your previous questions, the usual course in an instance where a public official has improperly channeled public property to a private entity — particularly when the conveyance is charitable in nature, as appears to be the case here — has been to seek recovery in a civil action alleging an illegal exaction in violation of Ark. Const. art. XVI, § 13. Cf. Hodges v.LaMora, 337 Ark. 470, 475 (1999) (because "failure to collect restitution for theft surely does not qualify as a misapplication of public funds for illegal exaction purposes," taxpayer lacked standing to pursue suit for illegal exaction based on county employee's alleged theft of prescription drugs from detention center).
Question 5: Can (legally) a Quorum Court or a County Judge authorize theuse of county labor to spray water with a county water truck to keep thedust down on private property at a private for [—] profit function?
Applying the standard discussed in my answers to questions 1 through 3, I believe the spraying would be permissible only if it might reasonably be characterized as primarily serving the public purpose of protecting the general public from the dust.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosures
[1] The very fact that donations of public assets are permissible under certain circumstances confirms that gifts of public property are not automatically "null and void" pursuant to A.C.A. § 14-16-105.
[2] In various jurisdictions, statutes, ordinances or regulations prohibit the personal use of official vehicles. See, e.g., Morton v.Bell, 452 S.E.2d 103 (Ga. 1995) (city ordinance barred use of city-owned motorcycles for private funeral escort service); Bolar v. Department ofPublic Works — Water, 663 So.2d 876 (La. 1996) (regulation barred employee's use of parish truck to transport co-workers to bank); Statev. Lilly, 330 S.E.2d 30 (N.C.App. 1985) (statute rendered private use of publicly owned vehicle a misdemeanor). The Arkansas Code does not address this issue. Because I do not know if any local ordinance applies in the county referenced in your request, I am limiting my analysis to constitutional issues.
[3] As I noted in Ark. Op. Att'y Gen. 2000-126:
 Notwithstanding the language of article XVI, § 11, it is well established that a tax enacted or approved by the people without a statement of purpose is valid and may be appropriated for any general purpose. Western Foods, Inc. v. Weiss, 338 Ark. 140, 150-51, 992 S.W.2d 100 (1999); accord Oldner v. Villines, 328 Ark. 296, 305, 992 S.W.2d 100 (1997).